HENRY K. OLIVER *vs.* THE LIVERPOOL & LONDON LIFE AND
FIRE INSURANCE COMPANY.

An English insurance company, some of whose members are subjects of Great Britain, and the others, citizens of another state, and which, though not incorporated, is, by act of parliament, clothed with the rights of acting independently of the rules that govern an ordinary partnership, is liable to the tax imposed by St. 1862, *c.* 224, § 2.

BILL IN EQUITY filed by the treasurer of the Commonwealth, under St. 1862, *c.* 224, § 11, to restrain the defendants from prosecuting their business until the tax assessed upon them by § 2 of that statute has been paid. It is provided by that section that " each fire, marine, and fire and marine insurance company incorporated or associated under the laws of any government or state other than one of the United States, shall annually pay to the treasurer of the Commonwealth a tax of four per cent. upon all premiums charged or received on contracts made in this Commonwealth for the insurance of property, or received or collected by agents in this Commonwealth;" which tax " shall be assessed by the treasurer of the Commonwealth for the year ending October thirty-first, and shall be paid within ten days after the first Monday in December, in each year; and no other tax shall be assessed upon such insurance companies so long as this act continues in force."

The defendants are an English company formed for the business of insurance, and organized under a deed of settlement in 1836, by which the property is divided into transferable shares, and two supplemental deeds of settlement, the one made in 1851 and the other in 1863. By the deed of 1851 provision is made for extending the business of the company into foreign countries, with local officers and shareholders. Three acts of parliament have been passed, in 1836, 1847 and 1864 respectively, relative to this company. By the act of 1836, 6 & 7 Wm. IV. *c.* 119, it is provided that the company may sue and be sued by the name of its chairman, or, in certain cases, by the name of some other officer; and that no suit shall abate by reason of the death of such officer; that the company may sue its

own members, and be sued by them; that on a judgment in any suit against the company, execution may be issued against any proprietor; that the liability of the proprietors shall be unlimited and shall not be restricted by contract; and that nothing in the act shall be deemed to incorporate the company. By the acts of 1847 and 1864, 10 & 11 Vict. *c.* 268, and 17 & 18 Vict. *c.* 116, further powers are given to the company, but both these acts expressly stipulate that the defendants shall not be deemed to be incorporated, and that the liability of the members of the company shall not be limited. Under and by virtue of these deeds and acts, certain citizens of New York have become members of the company, subject to all the duties and liabilities, and entitled to the rights and benefits to the same extent as the original members of the company. The company have been engaged in the insurance business in this Commonwealth since 1854.

On the above facts, which were agreed, the case was reserved by *Colt*, J., for the determination of the whole court.

*C. Allen*, Attorney General, *& J. C. Davis*, for the plaintiff. 1. The defendants are a fire insurance company " incorporated or associated " under the laws of Great Britain.

2. The tax assessed is not invalid under the provision of art. 4, § 2 of the Constitution, that " the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," although some of the members of the company are citizens of the state of New York. The tax assessed upon the defendants is not more burdensome than those imposed upon our own insurance companies. In addition to a tax of one per cent. upon the premiums and assessments received by them, the latter are required to pay a tax upon the market value of their capital stock, and most of their investments are taxed. The tax of four per cent. upon premiums received is the only one exacted from foreign companies. It is the company which is engaged in the business of insurance here, and which is called upon to pay a tax upon that business out of its funds, and not the few members of the company who reside in New York. The privilege and immunity of being exempt

from any other taxes than such as are imposed upon the citizens of this state is claimed on behalf of the association as such. This association has no personal character or rights, and is not properly within the designation of a citizen, and if it sees fit to go beyond the sovereignty under whose laws it was organized, it must submit to such terms as other sovereignties see fit to impose. The company cannot be regarded as a citizen of any one of the states of this Union, in any sense. *Bard* v. *Poole,* 2 Kernan, 495, 504. *Tatem* v. *Wright,* 3 Zabr. 429, 447. It is not practicable to estimate the interest which the members of the company who are citizens of New York have in the premiums received here, and to apportion the tax for their relief. *Lee* v. *Templeton,* 6 Gray, 579. *Sulley* v. *Attorney General,* 5 H. & N. 711. The benefits of the exemption sought for would enure for the most part to inhabitants of Great Britain, who hold by far the greater part of the stock. The defendants have most of the attributes of a corporation; they are united in one body, under a special name, and with privileges which secure a succession of members without changing the identity of the body, and constitute the members for the time being an artificial person, capable of transacting a particular kind of legal business like a natural person. They use a common seal. The company can sue in the names of its officers, and it can sue its own members and be sued by them. Similar companies have been held in England to be *quasi* corporations. Lindley on Part. 4. Angell & Ames on Corp. §§ 25, 58, 76. Wordsworth on Joint Stock Companies, 41, 175. *Van Sandau* v. *Moore,* 1 Russ. 441. Many companies having similar attributes, and having, like the defendants, unlimited personal liability of the stockholders, have been organized under the laws of New York, for the purpose of engaging in insurance and other business; and such associations have been held to be corporations for the purpose of taxation, although in granting some privileges to them the legislature enacted that the conferring of these privi eges " should in no court be construed to give said associatior.s any rights or privileges as corporations." *Sandford* v. *Supervisors of New York,* 15 How. Pract. 172. *People* v. *Assessors of Watertown,* 1 Hill,

**616.** *Thomas* v. *Dakin*, 22 Wend. 9, 103. A corporation is not a citizen within the meaning of the constitutional provision above referred to; *Bank of Augusta* v. *Earle*, 13 Pet. 589; and a state may refuse to permit foreign corporations to do business within its limits, or it may tax their business more heavily than it taxes that of domestic corporations. *De Groot* v. *Van Duzer*, 20 Wend. 390. *Corfield* v. *Coryell*, 4 Wash. C. C. 371, 380. *Commonwealth* v. *Milton*, 12 B. Monr. 212. *State* v. *Delaware Railroad Co.* 1 Vroom, 473. The same considerations apply to associations established under the laws of, and endowed with privileges by, another government. It is because the laws of a country have, in general, no extra-territorial operation, that a corporation cannot demand as a matter of right the privilege of dealing in a country not under the jurisdiction of the sovereignty which created it. *Bard* v. *Poole*, 2 Kernan, 495, 504. *Blackstone Manufacturing Co.* v. *Blackstone*, 13 Gray, 488. Whether the defendants are a corporation or a partnership, they claim to exercise here franchises, powers and capacities which are created by the laws of Great Britain, and the exercise of which is essential to the successful discharge of their business. They cannot avail themselves here of the privileges with which they have been endowed by a foreign government, except by the permission of the governing power of this state, and upon such terms as that power may attach to the exercise of those privileges here. See *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148; Angell & Ames on Corp. § 486 *a.*

3. The tax does not conflict with the provisions of the treaty with Great Britain. The construction given by the defendants to the treaty would lead to the result that duties cannot be imposed upon importations.

*B. R. Curtis & J. G. Abbott*, for the defendants. 1. The St. of 1862, *c.* 224, § 2, is only applicable to corporations, and not to associations or companies of natural persons, acting as a partnership and not as an artificial political body created by law. If it is claimed that the words "or associated" should exten*d* the act to natural persons, it would follow that two citizens of a foreign state associating themselves together as partners, as a

company, under their own laws, if they attempted to transact the business of insurance here, must pay a tax of four per cent., while each of them separately could do the same business untaxed. If the intention had been to tax natural persons, citizens of a foreign state, carrying on the business of insurance here, that intention would have been manifested by apter terms and words. The word "associated" is here used not for the purpose of including natural persons, but only because, in some states, general laws may exist for the formation of corporations, called associations.

2. By the laws of Great Britain the defendants are an association of natural persons, a partnership in fact, with certain privileges given to them by special acts of the legislature.

In Great Britain, the king and parliament only can create corporations. In this case, neither has exercised the power, but when parliament granted to these defendants certain privileges, special care was taken to declare that the grant made should not create a corporation, and that the defendants should not be exempt from personal liability. In this state the defendants would not possess and enjoy the privilege, or be subject to the liability, of suing and being sued in the name of an officer of their association, but would be obliged to sue or be sued in the name of all the partners, for the acts of parliament giving that right and imposing that liability, apply to the manner of enforcing a remedy, and cannot avail beyond its own limits and courts. So that when the defendants transact their business in this country, the acts of parliament, giving some of the privileges of corporations, are of no avail to them ; in fact they are like any partnership of natural persons, and must be treated in the same way, entitled to the same rights and privileges, and subject to the same liabilities. By an examination of all the authorities, the fact that associations like that of the defendants' are not corporations, would seem to be established beyond any question. Lindley on Part. 2–5, 1165. Wordsworth on Joint Stock Companies, 41, 232, 275. *Harrison* v. *Timmins,* 4 M. & W. 510. *Bartlett* v. *Pentland,* 1 B. & Ad. 704. *Van Sandau* v. *Moore,* 1 Russ. 441. *Cape's Executor's case,* 2 De G.,

Macn. & Gord. 562. *Blakeley's case*, 13 Beav. 133. *Burnes* v *Pennell*, 2 H. L. Cas. 497, 522. The association does not make out of its members a new artificial political person; it still remains a body of natural persons, with certain privileges conferred upon them. No new body is created by the legislature with the property of individuality, and the capacity of holding property and transacting business.

3. The existing treaty between the United States and Great Britain provides that " there shall be between the territories of the United States of America, and all the territories of His Britannic Majesty, a reciprocal liberty of commerce. The inhabitants of the two countries, respectively, shall have liberty freely and securely to come with their ships and cargoes to all places, ports and rivers, in the territories aforesaid, to which other foreigners are permitted to come, to enter into the same, and to remain, and reside in any parts of the said territories respectively; also to hire and occupy houses and warehouses for the purposes of their commerce; and generally the merchants and traders of each nation, respectively, shall enjoy the most complete protection and security for their commerce, but subject always to the laws and statutes of the two countries respectively." 8 U. S. Sts. at Large, 228, 361. In reference to that " commerce," whatever it may be held to mean, clearly no state could tax a British subject where it did not tax one of its own citizens; it could not discriminate against the commerce of the foreigner. The real question upon which the decision must depend is, what is here the meaning of the word " commerce." The meaning of the word is intercourse, in its largest sense. This meaning was given to it in defining and construing the power of the federal authorities to regulate foreign commerce. *Gibbons* v. *Ogden*, 9 Wheat. 189. *Cooley* v. *Port Wardens*, 12 How. 299. *Foster* v. *Davenport*, 22 How. 244. *Almy* v. *California*, 24 How. 169. *Smith* v. *Turner*, 7 How. 283. Under the Constitution, power is given to the United States to "regulate commerce among the Indian tribes;" and it has been holden that under this power congress could forbid any intercourse with the Indians, except under license, thus

establishing the meaning of commerce as being intercourse and the transaction of any business. *United States* v. *Cisna,* 1 McLean, 254. *United States* v. *Holliday,* 3 Wallace, 407. In all commercial nations, insurance is one of the kinds of business most important to all commercial transactions. Commerce certainly would include the making of all contracts,either necessary or which might favor trade, and the traffic of buying or selling. No one would deny that the contract for the transportation of merchandise by land or water, or the business of a broker buying or selling goods, would be included within the word commerce. Why then may not contracts of insurance be also included within the meaning of the same term?

4. The law is also in conflict with that provision of the Constitution which gives to the United States the regulation of commerce with foreign nations. This power is exclusively in the federal government. Under this provision all regulations governing British subjects in carrying on business here, must be made by congress, not by the several states; and if congress has not forbidden the carrying on of any lawful business, then the state cannot. If the power was with the states, we might have the public scandal of the legal *status* and powers of British subjects being entirely different in the several states.

5. But whatever may be the power of the state to impose a tax upon subjects of Great Britain greater than that imposed on its own citizens, when doing the same business, no such tax can be imposed on citizens of another state. This is no less a tax discriminating against the citizens of another state, that they happen to be associated together, or with subjects of Great Britain. There is nothing unlawful in associating together, or with foreigners, and by doing so they lose no rights to which they are entitled under the Constitution and laws. Notwithstanding such association, they retain the same rights they possessed before associating with others. If a single citizen of New York has the right to carry on the business of insurance in Massachusetts, then two or any larger number have the same right, nor is the right lost because subjects of Great Britain join with them. The laws of Massachusetts do not forbid her citizens

from carrying on the insurance business with subjects of **Great** **Britain**, or impose any tax upon them if they should engage in such partnership. The citizens of New York then have the same right to form a partnership with British subjects for the transaction of the same business, without subjecting themselves to a burdensome taxation.

6. Even if the defendants are held to be a corporation, still the tax cannot be sustained. The only ground of upholding it is under the provision of the Constitution authorizing the legislature to impose " reasonable duties and excises." But this duty or excise is unreasonable ; it imposes four times as large an excise upon the franchise of the defendants as it imposes upon precisely the same franchise created by the state.

HOAR, J. If the defendants are a foreign corporation, then the case of *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, is conclusive in favor of the plaintiff. It was there held that the right to exercise a corporate franchise within this Commonwealth was the proper subject of an excise ; and that " a corporation which seeks, by its agents, to establish a domicil of business in a state, other than that of its creation, must take that domicil subject to the responsibilities and burdens which it finds in force there. The state may deny to foreign corporations the right to transact their business, hold property, or exercise any corporate function whatever within its limits. Or it may permit them to exercise such privileges upon terms prescribed by law, as has long been done in relation to insurance companies."

We have, then, first to consider whether the defendants are a corporation, or an association so far clothed with the functions and attributes of a corporation as to come within the just application of the principles relating to corporations above stated. There can be no doubt that they are " an insurance company, associated under the laws of a government other than one of the United States ; " and therefore that they come literally within the terms used in the St. of 1862, *c.* 224, § 2, which provides for the assessment of a tax upon such bodies. But the defendants object that they are not a corporation ; and that such

**a tax** as the statute imposes cannot lawfully be assessed upon them, because they are to be regarded as a mere partnership, consisting in part of British subjects and in part of citizens of the state of New York, so that under the Constitution of the United States and the subsisting treaties with Great Britain they are entitled to transact any lawful business within this Commonwealth without being subject to any burdens which are not imposed upon our own citizens engaged in like avocations.

It appears from the exhibits annexed to the bill and answer, and from the agreed facts which are reported, that the defendants are an English joint-stock company, organized in 1836 under a deed of settlement, and since transacting business under that and two supplemental deeds of settlement, with powers and privileges conferred upon the company by three acts of parliament, of 1836, 1847, and 1864. By one of the supplemental deeds of settlement, provision is made for the transaction of business in foreign countries, with local shareholders and officers; and it is under this that certain citizens of New York have become members of the company.

It is carefully and expressly stipulated in each of the acts of parliament, that it shall not have the effect to incorporate the company; and the personal liability of the members for the obligations of the association is carefully preserved. But while the creation of a corporation in the full sense of the term, as defined by the common law, is thus excluded, and, as we are inclined to believe, mainly with a view to keep this personal liability unimpaired, it is obvious that many powers of a corporate nature are expressly granted. The company has a name as an association, maintaining the identity of the body through all changes of its members; its property is divided into transferable shares; and it has conferred upon it the legal capacity to sue and be sued in the name of one of its officers, and such a suit does not abate by reason of the death or resignation of the officer, or by reason of any change in the members, and may be brought by or against a member, as well as a third person.

To describe such a creature of law as this, we think the language of a recent English text writer is substantially accurate,

which says that "joint stock companies are not pure partner-ships, for their members are recognized as an aggregate body, nor are they pure corporations, for their members are more or less liable to contribute to the debts of the collective whole. They are associations of persons intermediate between corporations known to the common law and ordinary partnerships, and partake of the nature of both." Lindley on Part. (2d ed.) 6. And we are all of opinion that when, by legislative authority or sanction, an association is formed capable of acting independently of the rules and principles that govern a simple partnership, it is so far clothed with corporate powers that it may be treated, for the purposes of taxation, as an artificial body; and becomes subject as such to the jurisdiction of the government under which it undertakes to act and contract in its associated capacity.

We think the defendants are an association of the kind to which the statute of 1862 was expressly intended to apply, as well as to bodies wholly corporate in their character; and that, being permitted by the comity of our laws to exercise their functions within this Commonwealth, they can claim no exemption from regulations appropriate to their collective action on account of the citizenship or nationality of their individual members.

*Decree for the plaintiff.*