## HEMPHILL *v.* ORLOFF

No. 343. Argued March 7, 8, 1928.—Decided June 4, 1928.

538

Mr. *Charles A. Wagner,* with whom Mr. *Thomas G. Long* was on the brief, for plaintiff in error.

The citizen of a State has the right to accept a trust created and conferred by agreement by a natural person, act as trustee and conduct the affairs thereof. This is one of the privileges and immunities guaranteed by § 2, of Art. IV of the Constitution. The citizen has the same right to go into each of the several States and there do business, including the making of contracts and the buying and selling of property, as trustee, as in his individual capacity. *Slaughter-House Cases,* 16 Wall. 36; *Ward* v. *Maryland,* 12 Wall. 418; *Corfield* v. *Coryell,* 4 Wash. C. C. 380; *Hess* v. *Pawloski,* 274 U. S. 352; *Farmers Loan*

& *Trust Co.* v. *Chicago & A. Ry. Co.,* 27 Fed. 146; *Roby* v. *Smith,* 131 Ind. 344

The statute contravenes that section, and also the due process clause of the Fourteenth Amendment. *Barnes* v. *People,* 168 Ill. 425; *Hoadley* v. *Insurance Comm'n,* 37 Fla. 564; *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60; *In re Schecther,* 63 Fed. 695; *Maynard* v. *Granite State Provident Ass'n,* 92 Fed. 435.

The trust instrument created a true trust. There is no substantial difference in respect of trusts between the law of Massachusetts and that of Michigan. *Penny* v. *Croul,* 76 Mich. 471; *Taylor* v. *Davis,* 110 U. S. 330; *Packard* v. *Kingman,* 109 Mich. 497; *Feldman* v. *Preston,* 194 Mich. 352; *Betts* v. *Hackathorn,* 159 Ark. 621; *Neville* v. *Gifford,* 242 Mass. 124; *Rand* v. *Morse,* 289 Fed. 339; *McCarthy* v. *Parker,* 243 Mass. 465; *Rand* v. *Farquhar,* 226 Mass. 91; *Hardee* v. *Adams Oil Ass'n* (*Tex.*), 254 S. W. 602; 3 Kent's Comm., 27; Story, Partnership, 6th ed., § 164; Lindley, Partnership, 9th ed., § 268; *Hallett* v. *Dowdall,* 18 Q. B. 12; *Imperial Shale Brick Co.* v. *Jewett,* 169 N. Y. 143; *Greenwoods Case,* 3 De G. M. & G., 459; *Mayo* v. *Moritz,* 151 Mass. 481; *Williams* v. *Boston,* 208 Mass. 497; *Williams* v. *Milton,* 215 Mass. 1; *Frost* v. *Thompson,* 219 Mass. 360; Wrightinton, Unincorporated Ass'n and Business Trust, § 14.

There is not a single power or provision in the trust instrument that could not properly have been put in the will of a person who had been conducting such a business and desired it to be continued. This in and of itself is determinative of the character of the relation created by the instrument. See *Schumann-Heink* v. *Folsom,* 328 Ill. 321; *Baker* v. *Stern,* 194 Wis. 233.

It is clear that the reason why a State may exclude or impose conditions on a corporation of another State is that a corporation is a person in itself, an artificial person,

a mere creature of the law. *Dartmouth College case,* 4 Wheat. 636; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Paul* v. *Virginia,* 8 Wall. 168; *Louisville R. R. Co.* v. *Leston,* 2 How. 497; *Marshall* v. *B. & O. R. R.,* 16 How. 314. It is to be observed that in each of the first three cases the corporation had been created by special act of the sovereign power.

The modern method of granting charters under general laws to such persons as shall comply with prescribed formalities has not changed the nature of the organization thus formed.

The decisions of this Court as to the application of the different revenue laws to these trusts clearly show that they are not corporations. *Eliot* v. *Freeman,* 220 U. S. 178; *Crocker* v. *Malley,* 249 U. S. 223; *Hecht* v. *Malley,* 265 U. S. 144; *Burk-Waggoner Oil Ass'n* v. *Hopkins,* 269 U. S. 110.

In *Great Southern Fireproof Hotel Co.* v. *Jones,* 177 U. S. 449, it was held that the right of a partnership association limited organized under the laws of Pennsylvania to sue in the federal court was dependent upon the citizenship of its shareholders. This organization possessed far more of the characteristics of a corporation than the trust here in question.

The contract here sued upon was made in the course of interstate commerce and is entitled to recognition and enforcement by Michigan under the Commerce Clause. The note was given by the defendant in error for the assignment to her of certain notes for automobile trucks which had been sold by the Orloff Company to the Trust and the delivery to her of five of the six trucks covered by the paper. The Commercial Investment Trust at no time rented an office in Michigan; it never had a bank account, furniture, equipment, etc., of any kind in the

State. It commenced to purchase Michigan automobile paper in May 1919.

Not only did the instructions themselves require that the notes, contracts, etc., be sent to New York for acceptance or rejection, but all of these documents and papers contained in the record show that this practice was invariably followed. Every transaction between the Orloff Company and the Trust was examined, and without exception the papers were sent with accompanying letter from the Orloff Company to the Trust at New York; after investigation and acceptance the payments in the form of drafts on a New York bank or trust company were sent from the Trust there to the Orloff Company at Detroit. The only deviation from this course was that on one occasion, on Orloff's request for expedition, the Trust, after passing on the papers, sent payment by telegraph from New York to the Orloff Company's bank at Detroit.

The essence of the trust dealing then was that automobile dealers, and later a discount company in Michigan, sent certain automobile paper to the Trust at New York, offering it for sale. There it was either purchased or rejected; if purchased a New York draft was sent from New York to Michigan in payment.

" This Court will determine for itself whether what was done by plaintiff-in-error was interstate commerce and whether the state enactments as applied are repugnant to the commerce clause," *Kansas City Steel Co.* v. *Arkansas,* 269 U. S. 148, 150.

Commercial paper is a subject of interstate commerce. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Passenger Cases,* 7 How. 283; *Henderson* v. *New York,* 92 U. S. 259; *Western Union* v. *Pendleton,* 122 U. S. 347; *Pensacola Tel. Co.* v. *Western Union,* 96 U. S. 1; *Telegraph Co.* v. *Texas,* 105

U. S. 460; *International Text Book Co.* v. *Pigg,* 217 U. S. 91; *Id.* v. *Lynch,* 218 U. S. 664; *Id.* v. *Peterson,* 218 U. S. 664.

We submit that the doctrine declaring traffic in commodities to be essential for interstate commerce has been wholly disproved. The sale and transmission of instruction is unquestionably commerce; the sale and transportation of commercial paper must be the same.

The furnishing of electricity, even though it be delivered only to the state line, is interstate commerce and beyond the control of the state public utilities commission. *Public Utilities Comm'n* v. *Attleboro Steam & Electric Co.,* 273 U. S. 83.

Likewise the transmission of information by wireless telegraphy, radio, etc., has been held to be commerce. *Marconi Wireless Telegraph Co.* v. *Commonwealth,* 218 Mass. 558.

The mere free ranging of cattle over a state boundary is interstate commerce. *Thornton* v. *United States,* 271 U. S. 414. Likewise, the sale of tickets for interstate or foreign transportation. *DiSanto* v. *Pennsylvania,* 273 U. S. 34; *Texas Transport Co.* v. *New Orleans,* 246 U. S. 150. *Nathan* v. *Louisiana,* 8 How. 73, distinguished.

That these notes are secured by chattel mortgages does not change the transaction from one in interstate commerce to a local transaction. *York Mfg. Co.* v. *Colley,* 247 U. S. 21; *Norfolk & Western Ry. Co.* v. *Sims,* 191 U. S. 441; *United States* v. *United Shoe Machinery Co.,* 258 U. S. 451; *Lyons* v. *Federal System of Bakeries,* 290 Fed. 793; *Vulcan Steam Shovel Co.* v. *Flanders,* 205 Fed. 102; *Houston Canning Co.* v. *Virginia Can Co.,* 211 Ala. 232; *Powell* v. *Rountree,* 157 Ark. 241; *Davis & Warrell* v. *General Motors Acceptance Corp'n,* 153 Ark. 626; *Jones* v. *General Motors Acceptance Corp'n,* 205 Ky. 227; *General Motors Acceptance Corp'n* v. *Shadyside Coal*

Co., 102 W. Va. 402; *General Motors Acceptance Corp'n* v. *Lund,* 60 Utah, 247.

This transaction being essentially one in interstate commerce, all instrumentalities and means having a natural relation to the transaction such as the solicitation of business, collection, etc., were available without State interference. *Atlantic Coast Line* v. *Standard Oil Co.,* 275 U. S. 257; *International Text Book Co.* v. *Pigg,* 217 U. S. 91; *Cheney Bros.* v. *Massachusetts,* 246 U. S. 147; *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203; *Robbins* v. *Taxing District,* 120 U. S. 489; *Brennan* v. *Titusville,* 153 U. S. 289; *Caldwell* v. *North Carolina,* 187 U. S. 622; *Dozier* v. *Alabama,* 218 U. S. 124; *Davis* v. *Virginia,* 236 U. S. 697; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *Crenshaw* v. *Arkansas,* 227 U. S. 389; *Rogers* v. *Arkansas,* 227 U. S. 401; *Stewart* v. *Michigan,* 232 U. S. 665; *Penna. Ry. Co.* v. *Sonman Shaft Coal Co.,* 242 U. S. 120; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282; *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197; *York Mfg. Co.* v. *Colley,* 247 U. S. 21.

*Mr. Isadore Levin,* with whom *Mr. Henry M. Butzel* was on the brief, for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Plaintiff in error, Vice-President of the payee and acting for it, sued Mrs. Orloff, in the Circuit Court, Wayne County, Michigan, on her promissory note payable to the Commercial Investment Trust, or order, executed at Detroit, Michigan, July 22, 1921. She defended upon the ground, among others, that the payee was a foreign corporation within the meaning of the Michigan statutes; that it had not complied therewith; and, consequently, could not maintain the action. Both

the trial and Supreme Court of the State sustained this defense.

Relevant provisions of the statutes follow—Mich. Compiled Laws, 1915:

"Sec. 9063. It shall be unlawful for any corporation organized under the laws of any state of the United States, except the state of Michigan, or of any foreign country, to carry on its business in this state, until it shall have procured from the secretary of state of this state a certificate of authority for that purpose. . . ."

"Sec. 9068. No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the secretary of state."

"Sec. 9071. The term 'corporations' as used in this act shall be construed to include all associations, partnership associations and joint stock companies having any of the powers or privileges of corporations, not possessed by individuals or partnerships, under whatever term or designation they may be defined and known in the state where organized."

The Commercial Investment Trust—hereinafter the Trust—is of the class commonly known as "Massachusetts Trusts" or "Common Law Trusts." The following statement sufficiently indicates the general features of the lengthy "Agreement and Declaration of Trust" under which it was organized at Boston, Mass., March 29, 1915.

The business of the association shall be conducted under the name specified for the trustees in their collective capacity—The Commercial Investment Trust. They may adopt another. Seven are designated; their successors shall be elected for terms of two years at annual shareholders' meetings, each share being entitled to one vote, which may be cast by proxy.

Wide powers are granted to the trustees to buy and sell stocks, bonds, negotiable securities, personal and real property, to loan money, etc., and generally to manage and conduct the trust as fully as if they were the absolute owners of the estate; also they shall have power, but without obligation on their part, to execute any and all instruments and to do any and all things not 'inconsistent with the provisions hereof, the execution or performance of which they may deem expedient. They may appoint and define the duties of officers and agents. " But the trustees shall not have any power or authority to borrow money on the credit or on behalf of the Shareholders or to make any contract on their behalf for repayment of any money raised by mortgage, pledge, charge or other incumbrances in pursuance of the provisions hereof, or to make any contract or incur any liability whatever on behalf of the Shareholders or binding them personally."

" Trustees shall hold the legal title to, and have the absolute and exclusive control of, all property at any time belonging to this trust subject only to the specific limitations herein contained; they shall have the absolute control, management and disposition thereof."

" The death or resignation of the trustees, or any of them, shall not operate to annul the trust or to revoke any existing agency created pursuant to the terms of this instrument."

" Every note, bond, contract, instrument, certificate, share or undertaking and every other act or thing whatsoever executed or done by the trustees or any of them in connection with the trust hereby created, shall be conclusively taken to have been executed or done only in their or his capacity of trustee or trustees under this agreement and such trustee or trustees shall not be personally liable thereon."

The trustees and shareholders are exempted from personal liability.*

Shareholders' meetings shall be held annually for the purpose of electing trustees. Interest in the estate shall be evidenced solely by certificates for participation shares, to be regarded as personal property. A shareholder's death shall not operate to determine the trust nor entitle the decedent's representative to an accounting or to take action in the courts or elsewhere, against the trustees. Shareholders shall have no title in the trust property or right to call for partition, division, or accounting. The

---

*" No recourse shall at any time be had under or upon any note, bond, contract, instrument, certificate, undertaking, obligation, covenant, or agreement issued or executed by the trustees under or pursuant to the terms of this agreement or in managing the trust estate, or by the Executive Committee or any member thereof, or by any officer or agent of the Trustees, or by reason of anything done or omitted to be done by them or any of them against the trustees individually or against the members of the Committee or against any such officer or agent or against any shareholder, or the holder of any other security issued by the trustees, either directly or indirectly, by legal or equitable proceeding, or by virtue of any suit or otherwise, except only to compel the proper application or distribution of the trust estate, it being expressly understood and agreed that this agreement and all obligations and instruments executed thereunder are executed pursuant hereto by the trustees and any acts done or omitted to be done by them are solely the obligations, instruments, acts and omissions of or in respect of the trust estate and that all the obligations, instruments, liabilities, covenants and agreements, acts and omissions of the trustees as trustees shall be enforced against and be satisfied out of the trust estate only, or such part thereof as shall, under the terms and provisions of this agreement, be liable for or chargeable therewith, and all personal and individual liability of the trustees, except as above stated, and of the members of the Executive Committee, and all officers and agents, and of the shareholders and all beneficiaries of the trust, are hereby expressly waived and negatived. The trustees and their agents are not authorized to contract any debt or do anything which will charge the shareholders or bind them personally."

trustees shall have no power to call upon shareholders for any sum of money or assessment whatever, except such as they may agree to pay.

"The trustees, may, from time to time, distribute to the shareholders such receipts or other parts of the trust estate as they shall determine. The amount and conditions of such payments shall be determined by the trustees."

"For any of the purposes of the trust the number of shares may, from time to time, be increased or reduced by the trustees. In case the number of shares is increased, the additional shares shall be issued and disposed of upon such terms and in such manner as the trustees may determine."

The trust shall continue until the death of the last survivor of seven named individuals.

Concerning Voluntary Associations, ch. 182, General Laws of Massachusetts, 1921, Vol. 2, p. 2077, provides—

"Sec. 2. The Trustees of an association shall file a copy of the written instrument or declaration of trust creating it with the commissioner and with the clerk of every town where such association has a usual place of business. . . ."

"Sec. 6. An association may be sued in an action at law for debts and other obligations or liabilities contracted or incurred by the trustees, or by the duly authorized agents of such trustees, or by any duly authorized officer of the association, in the performance of their respective duties under such written instruments or declarations of trusts, and for any damages to persons or property resulting from the negligence of such trustees, agents or officers acting in the performance of their respective duties, and its property shall be subject to attachment and execution in like manner as if it were a corporation, and service of process upon one of the trustees shall be sufficient." Gen. Acts Mass., 1916, ch. 184.

The Massachusetts courts give effect to agreements like the one here described, recognize the entity of associations organized thereunder, and hold both trustees and shareholders exempt from personal liability. See *Hussey* v. *Arnold,* 185 Mass. 202; *Williams* v. *Milton,* 215 Mass. 1, and cases cited; *Frost* v. *Thompson,* 219 Mass. 360.

It was held by the court below that the Trust must be regarded as a corporation within intendment of the Michigan statutes which could not lawfully carry on local business within the State or make valid contracts in connection therewith without having complied with prescribed requirements. There was no attempt to comply therewith.

Plaintiff in error insists that, as construed by the Supreme Court, the statutes of Michigan deny to the trustees, collectively called "Commercial Investment Trust," the benefits of Section 2, Article IV, of the Constitution. "The citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Also that they deprive the trustees of property without due process of law contrary to the Fourteenth Amendment and restrain interstate commerce.

It is settled doctrine that a corporation organized under the laws of one state may not carry on local business within another without the latter's permission, either express or implied. A corporation is not a mere collection of individuals capable of claiming all benefits assured them by Section 2, Article IV, of the Constitution. *Bank of Augusta* v. *Earle,* 13 Peters 519, 584, 586, 587; *Paul* v. *Virginia,* 8 Wall. 168; *Western Turf Association* v. *Greenberg,* 204 U. S. 359, 363. See also *Slaughter House Cases,* 16 Wall. 36, 77. In the first of the causes just cited, Chief Justice Taney, for the Court, said—

"It is true, that in the case referred to, [*United States Bank* v. *Deveaux,* 5 Cranch 61] this Court decided that in a question of jurisdiction they might look to the char-

acter of the persons composing a corporation; and if it appeared that they were citizens of another state, and the fact was set forth by proper averments, the corporation might sue in its corporate name in the courts of the United States. . . .

" But the principle has never been extended any farther than it was carried in that case; and has never been supposed to extend to contracts made by a corporation; especially in another sovereignty. If it were held to embrace contracts, and that the members of a corporation were to be regarded as individuals carrying on business in their corporate name, and therefore entitled to the privileges of citizens, in matters of contract, it is very clear that they must at the same time take upon themselves the liabilities of citizens, and be bound by their contracts in like manner. The result of this would be to make a corporation a mere partnership in business, in which each stockholder would be liable to the whole extent of his property for the debts of the corporation; and he might be sued for them, in any state in which he might happen to be found.

" The clause of the Constitution referred to certainly never intended to give to the citizens of each state the privileges of citizens in the several states, and at the same time to exempt them from the liabilities which the exercise of such privileges would bring upon individuals who were citizens of the state. This would be to give the citizens of other states far higher and greater privileges than are enjoyed by the citizens of the state itself. Besides, it would deprive every state of all control over the extent of corporate franchises proper to be granted in the state; and corporations would be chartered in one, to carry on their operations in another. It is impossible upon any sound principle to give such a construction to the article in question.

" Whenever a corporation makes a contract, it is the contract of the legal entity; of the artificial being created

by the charter; and not the contract of the individual members. The only rights it can claim are the rights which are given to it in that character, and not the rights which belong to its members as citizens of a state; and we now proceed to inquire what rights the plaintiffs in error, a corporation created by Georgia, could lawfully exercise in another state; and whether the purchase of the bill of exchange on which this suit is brought was a valid contract, and obligatory on the parties."

Obviously the Trust here involved, is a creature of local law which demands the privilege of carrying on business in Michigan as an association—an entity—clothed with peculiar rights and privileges under a deed of settlement undertaking to exempt all of the associates from personal liability. As in the case of a corporation, and for the same general reasons, it cannot rely upon rights guaranteed to the individuals.

Whether a given association is called a corporation, partnership, or trust, is not the essential factor in determining the powers of a state concerning it. The real nature of the organization must be considered. If clothed with the ordinary functions and attributes of a corporation, it is subject to similar treatment. This was distinctly pointed out in *Oliver* v. *The Liverpool & London Life & Fire Ins. Co.*, 100 Mass. 531, affirmed here *sub nom. Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566. See also *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 162; *Hecht* v. *Malley*, 265 U. S. 144; *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110; *Hamilton* v. *Young*, 116 Kan. 128; *Weber Engine Co.* v. *Alter*, 120 Kan. 557; *State* v. *Hinkle*, 126 Wash. 581; *State* v. *Paine*, 137 Wash. 566.

Upon the facts disclosed, the court below held the Trust was carrying on the business of dealing in negotiable notes within the State of Michigan; and we find no reason for rejecting that conclusion. Such business is not interstate commerce. *Nathan* v. *Louisiana*, 8 How. 73; *Paul* v. *Vir-*

*ginia,* 8 Wall. 168; *Hatch* v. *Reardon,* 204 U. S. 152, 162; *Blumenstock Bros.* v. *Curtis Pub. Co.,* 252 U. S. 436, 443.

What we have already said shows plainly enough the insubstantial nature of the suggestion that the questioned statutes deprive the Trust, its trustees or members, of property without due process of law.

The judgment of the Court below must be affirmed.

*Affirmed.*