## SECURITIES AND EXCHANGE COMMISSION v. JONES.*

District Court, S. D. New York.
Aug. 12, 1935.

*Order affirmed 79 F.(2d) 617.

John J. Burns, of Washington, D. C. (Francis Currie and Francis S. Walker, both of Washington, D. C., of counsel), for applicant.

H. I. Fischbach, of New York City (Harry O. Glasser, of Enid, Okl., and J. N. Saye, of Longview, Tex., of counsel), for respondent.

CAFFEY, District Judge.

The condition of the calendars in this district and the pressure of other business demanding attention prevent thorough discussion. Unavoidably, comments must be hurried and in rather discursive form.

Two problems are presented. One relates to interpretation; the other to validity. I shall take up the interpretation phase first.

The petition is in conformity with the substantive provisions of the statute.

Its sufficiency is not to be measured by the requirements of formal court pleadings. I see no merit in the motion to strike out parts.

The registration statement was filed May 4, 1935. More than twenty days elapsed prior to counsel for the respondent interposing the procedural objections on which they now rely. No stop order has been issued by the commission. In consequence, by force of section 8 of the Securities Act (15 USCA § 77h), the statement became and continues to be effective (unless terminated by the respondent's own acts, hereafter mentioned).

By the same token, if the registration statement be still effective, section 8 empowered the commission to take testimony concerning it and the commission, therefore, is entitled to have the respondent attend as a witness before it. The subpœna for the respondent was duly served. He refused to appear. It follows, under section 22 (b), 15 USCA § 77v (b), that this court may entertain the present application and is authorized to direct him to appear before the commission (unless, indeed, this court's jurisdiction has been ousted by the review proceedings pending in a higher court).

Pursuant to section 9 (a), 15 USCA § 77i (a), the respondent has asked the Circuit Court of Appeals for the Second Circuit for a review of the commission's order, in substance holding (as he says) that the registration statement remains alive before it. He urges that, on this account, the authority of this court under section 22 (b) is suspended.

The respondent's contention would seem sound if only the ordinary rules of law relating to court proceedings governed and if Congress has not otherwise provided. The Circuit Court of Appeals itself plainly has authority to stay further proceedings by the commission until after it disposes of the review proceedings; but, so far as appears, and, as I understand, counsel agree it is the fact, to date that court has not issued a stay nor has one even been requested. In these circumstances, by force of section 9 (b), 15 USCA § 77i (b), the institution of the review proceedings in the appellate court does not operate as a stay of the commission's order. Inasmuch as the commission is free to go forward, it follows equally that there is no obstacle to this court's exercising the jurisdiction, vested in it by section 22 (b), to require the witness to·submit to examination by the commission.

Section 5, as amended by Act June 6, 1934, § 204 (15 USCA § 77e), unambiguously prohibits carriage of securities through the mails or in interstate commerce unless a registration statement as to such securities be in effect at the time (see, also, section 17 [15 USCA § 77q]). There are numerous other provisions in the statute relating to registration statements. See, for example, sections 6, 7, 9, 10, and 11 (15 USCA §§ 77f, 77g, 77i, 77j, 77k); also Schedule A (15 USCA § 77aa). It is not necessary, however, to set these out or even to deal with them in the instant case. This is so because, obviously, they are merely incidents to or provide mere mechanics for the administration of the commission's functions arising out of section 5. If section 5 stands, they will stand also.

So also, as it seems to me, it is equally manifest that the participation trust certificates in producing oil royalties, covered by the respondent's registration statement (Form C—1), are securities within the definition of that term embodied in section 2 of the act, as amended by Act June 6, 1934, § 201 (15 USCA § 77b), —precisely in the same way and to the same extent as are bonds and certificates of stock. Cf. New York ex rel. Hatch v. Reardon, 204 U. S. 152, 27 S. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736. I think there is nothing at variance with this view in Hemphill v. Orloff, 277 U. S. 537, 48 S. Ct. 577, 72 L. Ed. 978, or in Champlin Refining Co. v. Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403, or in any other·case cited by the respondent.

This brings us to the issues raised as to validity.

As a preliminary, several things are to be borne in mind: (1) We are not concerned with the Securities Exchange Act of 1934 (15 USCA § 78a et seq.), save in a minor single aspect, which will be pointed out. (2) Disposition of the commission's application to this court turns only upon the Securities Act of 1933, as amended by Act of June 6, 1934 (15 USCA § 77a et seq.); so that, with respect to constitutionality, that statute alone is now involved. (3) The court

should confine its consideration to such portions of the statute as are essential to determination of the litigation now before it. (4) In so far as the language of the statute permits, it should be construed so as to bring the enactment within the powers of Congress and thus to avoid an adjudication of unconstitutionality. (5) Every doubt must be resolved in favor of constitutionality. (6) Section 26 (15 USCA § 77z) provides that, even though some portion of the act be held invalid, the remainder shall not be affected; and it is settled· that such a declaration by Congress creates a presumption that the invalidity of any separable provision leaves the remaining provisions unaffected. Champlin Refining Co. v. Commission, 286 U. S. 210, 234, 235, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403.

■ Consistently with the six propositions just recited, for the purpose of passing on the principal assault made on the Securities Act of 1933, I see no occasion to determine more than whether Congress has power to provide for exclusion from the mails, or from interstate transportation, of physical securities when no registration statement concerning them is in effect. If I be right in this analysis of the situation, then it seems to me clear that so much of the statute as deals with the particular subject, embodied in section 5, as amended (15 USCA '§ 77e), and related sections, is valid.

In a long line of cases—certainly from as early as Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877—the Supreme Court has sustained many regulations of the mails more drastic than those contained in the Securities Act. It strikes me that Public Clearing House v. Coyne, 194 U. S. 497, 24 S. Ct. 789, 48 L. Ed. 1092, amply supports the portion of section 5 to which I have referred. See, also, United States ex rel. Milwaukee S. D. Pub. Co. v. Burleson, 255 U. S. 407, 41 S. Ct.·352, 65 L. Ed. 704.

The facts within general knowledge are entirely adequate to warrant the Congress in concluding (1) that exclusion from the mails of securities involving schemes to defraud is in the public interest; (2) that this object could only be accomplished by advance consideration; (3) that an appropriate means for examining into the fitness of securities for admission to mail privileges was the creation of an expert government agency to conduct needed investigations; (4) that among the pertinent equipment for efficient operation of such an agency are registration statements, to be supplied by applicants for mail privileges, and subpœna power in the agency for use in getting evidence to enable it to reach proper decisions with respect to the statements. Constitution, article 1, § 8, cl. 18; Legal Tender Cases, 12 Wall. 457, 533, 534, 20 L. Ed. 287.

■ In like way, to the extent we are concerned at present, I think Congress had power to provide in section 5, as it did, regulations for the transportation of securities in interstate commerce. McDermott v. Wisconsin, 228 U. S. 115, 128, 33 S. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, Ann. Cas. 1915A, 39.

In Hammer v. Dagenhart, 247 U. S. 251, 38 S. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724, the goods dealt with were harmless. For that reason, the case is distinguishable. The statute here, however, denies the facilities of interstate commerce only to articles which, after hearing, are duly ascertained to be fraudulent or, if not actually fraudulent, unfair to investors. They are. harmful. Moreover, their nature, under conditions prevailing today, is such that no person distant from their place of origin ordinarily can find out for himself whether they are or are not worthless or vicious in character. The statute under consideration makes no attempt to interfere with their sale or other handling within the single state of their initiation. On the other hand, where offered to prospective purchasers far from there, I think there is no more ground for exempting them from regulation of their transportation interstate, until such transportation is licensed by a government agency, than there would be for letting foods and drugs circulate freely between the states without labels or without outlawing those which would injure the users.

■ Admittedly, the line of demarcation between what Congress may and what it may not prohibit with regard to interstate commerce is difficult to state with accuracy. From the foundation of the government the Supreme Court has struggled with the task. Nevertheless, on the decisions of our highest court—which are assembled and discussed with discrimina-

tion in Brooks v. United States, 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407—I feel no hesitancy in classing the Securities Act of 1933, in so far at least as I must pass on it in the present case, as well within the power of Congress to enact.

If Congress possess the power I have attributed to it, then it cannot be gainsaid that it may establish a government agency, such as the commission, as an appropriate means for discovering and announcing what securities meet the standards prescribed.

The respondent next insists that the proceedings before the commission with respect to the registration statement he filed with that body ended prior to commencement of the proceedings before this court to compel him to appear before the commission. This contention is the second chief ground on which he resists the issuance of a subpœna under the order of this court.

In brief, the position of the respondent is that the proceedings before the commission lapsed by his telling it that he withdrew his statement, as well as by his motions (overruled by the commission's examiner) to dismiss the proceedings and to quash the subpœna for him issued by the examiner. As both sides have conceded, this aspect of their dispute turns on the question of whether a particular rule of the commission is valid.

In substance, the rule is that no registration statement may be withdrawn without the consent of the commission. More specifically put, the rule says that any registration statement "may be withdrawn upon the request of the registrant if the commission consents thereto" and that the commission's consent "shall be given * * * with due regard to the public interest and the protection of investors."

As I construe the document referred to, it means no more than is now, and from remote times has been, embodied in court rules with respect to the discontinuance of lawsuits. A typical illustration of such a court rule is Equity Rule 2 of this court. In effect, that provides that a discontinuance will be permitted only upon such terms as the court deems justice to require, including (if the court see fit) bar of a second suit on the same cause of action. Equity Rule 2 is valid. Young v. Southern Pac. Co. (C. C. A.) 25 F.(2d) 630; In re J. R. Palmenberg Sons (C. C. A.) 76 F.(2d) 935. That being true, I see no reason why a like rule by the commission should not be valid.

I find nothing contra in Barrett v. Virginian Railway Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092, or in Ex parte Skinner & Eddy Corporation, 265 U. S. 86, 87, 44 S. Ct. 446, 68 L. Ed. 912. The supposed analogy in court procedure, on which the respondent relies, seems to me, therefore, to fail or at least not to help him. If a court may refuse a discontinuance, except on terms, when justice so requires, I see no warrant for holding unjustified a rule by the commission that it will retain and take testimony as to a registration statement voluntarily lodged with it until it is sufficiently informed to prescribe and has prescribed the terms which it deems demanded by "the public interest and the protection of investors" as a condition precedent to the registrant removing himself from its jurisdiction.

Moreover, ignoring the court rule analogy, I feel that a rule, having the meaning I have ascribed to the existing rule of the commission about terms of withdrawal of a registration statement, is well within the power conferred on the commission by section 19 (a) of the statute, as amended by Act June 6, 1934, § 209 (15 USCA § 77s (a), to make "regulations governing registration statements." The power exercised in adopting the rule does not impress me as legislative. United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; United States v. Janowitz, 257 U. S. 42, 45, 42 S. Ct. 40, 66 L. Ed. 120; Avent v. United States, 266 U. S. 127, 45 S. Ct. 34, 69 L. Ed. 202. I discover nothing inharmonious with this view in Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446, or in Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, or in any other case brought to my attention by the respondent's counsel. I think the cases they rely on are plainly distinguishable on their particular facts.

Even though, however, I be in error as to the statute sufficiently prescribing a guide for adoption by the com-

mission of the rule complained of, it seems to me incontrovertibly shown that Congress has itself affirmatively sanctioned the rule. As matter of fact, the rule was promulgated by the Federal Trade Commission during the period when it was charged with administration of the Securities Act of 1933. The Securities Exchange Act of 1934, which created the Securities and Exchange Commission and transferred to the latter administration of the Securities Act, expressly provided in section 210 that the rules theretofore issued by the Federal Trade Commission under the Securities Act should "continue in effect until modified, superseded, revoked, or repealed." 48 Stat. 908, 909 (15 USCA § 78ii). So far from the Securities and Exchange Commission having at all changed the rule, it has been left precisely in the same form.

Inasmuch as I regard the rule as valid and the rule itself, to the extent heretofore pointed out, continues in being a filed registration statement until the commission consents to its withdrawal, I see no escape from holding that the proceedings with respect to the respondent's registration statement are still pending before the commission.

The respondent suggests, rather than argues, that the examiner who issued the subpoena for him was disqualified, because an attorney of the commission. Nothing on the face of the proceedings tends to establish disqualification, unless it be the bare fact that he is an employee of the commission. As Congress has directed that body to perform a great mass of duties and has authorized it generally to appoint attorneys, as well as other agents, to assist in the discharge of those duties, and has definitely authorized officers of the commission to take evidence and conduct hearings (sections 19 (b) and 21 [15 USCA §§ 77s (b), 77u]), it seems to me manifest that it was within the province of the commission to use one of its attorneys as an examiner to conduct a hearing for the taking of testimony. Again, even though the respondent be entitled when he appears to object to going on before the person then acting as examiner, that affords no ground for collateral attack on an application to the court for an order requiring him to appear.

The respondent also charges that the commission intends to launch into a fishing expedition on his examination as a witness. At present, however, there is nothing to indicate, and I cannot anticipate, if he appear before the commission, that it will misbehave. It will be ample time for him to kick when he is spurred. For the moment, therefore, Federal Trade Commission v. American Tobacco Co., 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696, 32 A. L. R. 786, relied on by the respondent, is not pertinent.

Lastly, the respondent vigorously criticizes the policies of the statute. When engaged in the task of considering the validity of legislation, however, a court would trespass inexcusably outside its own domain if it gave weight to its own opinions, much more if it expressed itself, as to the wisdom or unwisdom of the action of another branch of the government. Accordingly, I refrain, as I feel obligated to refrain, from approval or disapproval of the Securities Act or the Securities Exchange Act.

Numerous additional matters have been discussed by counsel; but I do not think it necessary or even helpful to deal with them.

Motion of the respondent denied. Motion of the applicant granted. Settle order on two days' notice.