In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3665

NEW WEST, L.P.,

*Plaintiff-Appellant,*

*v.*

CITY OF JOLIET, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 1743—**Charles R. Norgle**, *Judge.*

---

ARGUED MAY 22, 2007—DECIDED JULY 5, 2007

---

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and SYKES, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* New West owns and operates Evergreen Terrace, an apartment complex in Joliet, Illinois. The Department of Housing and Urban Development subsidizes Evergreen Terrace under §8 of the Housing Act of 1937, 42 U.S.C. §1437f, so that persons with low incomes can afford to live there. Joliet thinks that Evergreen Terrace, built in 1965, is so rundown that it is a public nuisance. It has filed suit in state court seeking to condemn the property; it also has lobbied HUD not to renew the federal subsidy for Evergreen Terrace.

New West has responded with this federal suit. It makes three principal claims: first, that "the Supremacy Clause" forbids all of the City's activities; second, that the City's litigating and lobbying violates 42 U.S.C. §§ 1982 and 1983; third, that the City has violated the Fair Housing Act, 42 U.S.C. §§ 3601-19, by discouraging current and prospective tenants (most of them minorities) from living in Evergreen Terrace. The district court dismissed the complaint on the pleadings, largely for lack of a case or controversy within the scope of Article III. 2006 U.S. Dist. LEXIS 68693 (N.D. Ill. Sept. 8, 2006). New West is trying to litigate the tenants' rights rather than its own, the district court thought, and to the extent that New West champions its own rights it must do so in state court.

This complaint cannot be dispatched so easily. Let us start with the Supremacy Clause. The district court understood that this clause does not create any substantive rights; instead it provides that national law prevails over state and local law in the event of conflict. The federal rules must come from §8 or the Fair Housing Act, and if these preempt any action under state law (such as the pending condemnation suit), then New West could invoke preemption as a defense in the state litigation. The district court held that this defensive use is the exclusive remedy. That would be so if defendants were private actors. See, e.g., *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830-32 (2002); *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-12 (1983); *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914). But §1983 allows a suit against state actors when the objective is to obtain a declaration that a rule of federal law supersedes the rules that the state actors are implementing. See, e.g., *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002); *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107-08 (1989). This means that claims of preemp-

tion may be litigated affirmatively under §1983, and not just as defenses. The district court did not notice the difference between public actors, who may be sued under §1983, and private actors, who cannot be.

Dismissing this claim was especially inappropriate, as the suit in which preemption would be offered as a defense is itself in federal court. The condemnation action was removed by the Department of Housing and Urban Development and is pending in the Northern District of Illinois as No. 05 C 6746 before the same judge who resolved New West's suit. The condemnation action had been on the judge's docket for more than nine months before New West's suit was dismissed. What sense could it make to send New West to state court to make a preemption defense to a suit pending in federal court? That the condemnation action *is* pending in federal court suggests that it is imprudent to resolve the current suit until the condemnation proceeding has been finally resolved; why deal with a defense independent of the action to which it pertains? Why struggle to assess injury when resolution of the condemnation proceeding may allow "just compensation" and otherwise clarify the financial consequences? The issues that divide New West and Joliet have been taken out of order, with regrettable results.

The district court stated that §1983 cannot support this litigation because of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), which holds that municipalities are not vicariously liable for acts of subordinate employees. But filing condemnation and nuisance suits is action by the City itself, as are statements made (to HUD and the public) by the Mayor. See *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). The Mayor and other top officials are defendants in their own right, moreover; there can be no doubt that §1983 is available to New West.

So is §1982, which provides that all citizens of the United States enjoy the same rights to own and manage real property as do white citizens. The district court wrote that New West, as a corporation, is not a "citizen". For this proposition it cited no authority. Since the Supreme Court held 163 years ago that a corporation *is* a citizen, no such authority is to be found. See *Louisville, Cincinnati & Charleston R.R. v. Letson*, 43 U.S. (2 How.) 497 (1844), overruling *Bank of the United States v. Deveaux*, 9 U.S. (5 Cranch) 61 (1809). There are scattered exceptions—for example, a corporation is not a "citizen" for the purpose of the privileges and immunities clause, see *Hamphill v. Orloff*, 277 U.S. 537 (1928)—but no court has held that corporations cannot be citizens under §1982.

Of course, New West isn't a corporation anyway; it is a partnership. For the purpose of 28 U.S.C. §1332, a partnership is not a "citizen." See *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). But all of its members are citizens, and if we consider the partners directly, as is done under §1332, they can invoke §1982. It may be enough for the purpose of §1982 that a partnership is a "person". See 1 U.S.C. §1 ¶6. Other collective entities have been allowed to litigate under §1982. See, e.g., *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) (religious organization). But we needn't decide whether "personhood" is enough, given the ability to look through the partnership to find "citizens" with rights protected by §1982. What is more, New West's actual and potential tenants also are citizens, and we know from *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), that property owners injured by discrimination against their customers may invoke §1982 whether or not the businesses are "citizens" as §1982 uses that term.

As for the Fair Housing Act: the district judge understood New West to be raising claims on behalf of the actual

and prospective tenants. Some passages in the complaint could be understood that way, but the complaint also contends that New West was injured in a proprietary capacity. Its vacancy rate rose, allegedly as a result of the City's efforts to discourage people from living in Evergreen Terrace. The complaint also alleges that New West incurred extra expense when the City's lobbying led HUD to delay renewing the §8 subsidy contract. These financial losses give it Article III standing.

For some statutes it matters whether the injuries are direct or derivative. See, e.g., *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006); *Holmes v. SIPC*, 503 U.S. 258 (1992). The Fair Housing Act is not among those statutes; the Supreme Court has held that only the Constitution's own requirements, and not any prudential supplements, apply to litigation under this statute. Thus *Gladstone, Realtors v. Bellwood*, 441 U.S. 91 (1979), held that a village and its white residents could sue real-estate brokers who allegedly discriminated against black persons who sought to move in; it was enough, the Court held, that the plaintiffs alleged a reduction in their own enjoyment as a result of having fewer black neighbors. And in *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), the Court held that a real-estate developer that had been denied a zoning variance could sue, even though the complaint alleged that the village sought to discriminate against minority tenants rather than the developer itself. New West relies on these decisions; defendants' brief ignores them, and the district court did not mention them. They are dispositive in favor of New West's standing.

The district court's first order of business on remand should be to resolve the condemnation action. If Joliet prevails, that would knock out many of the theories on which New West relies in this suit and may put limits on the recovery available for the rest (since to decide "just

compensation" the court will have to resolve any dispute about Evergreen Terrace's profitability). New West contends that §8 and the Fair Housing Act prevent condemnation of Evergreen Terrace, but it does not rely on any particular provision of that statute. Section 8 is a subsidy program, a carrot rather than a stick. HUD's regulations implementing the §8 program contemplate the possibility of the parcel's condemnation; they do not purport to forbid condemnations. See 24 C.F.R. §§ 245.405, 248.101. For its part, the Fair Housing Act forbids discrimination in housing programs without providing that any given housing development has a right to continued existence. Just as with §8, federal regulations implementing the FHA cover the demolition of housing projects. 24 C.F.R. Part 970, and exempt condemned buildings from these rules, see 24 C.F.R. §970.3. If Joliet thinks that a given parcel of land should be put to a public use, such as a park, and is willing to foot the bill, it is hard to see any obstacle in federal law. The City's condemnation action has been pending for 27 months; it is well past time to reach a decision.

If any issue survives the condemnation action, the next question is whether the *Noerr-Pennington* doctrine applies. See *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965). New West complains about Joliet's litigation, lobbying, and public statements. Joliet has filed several suits (a nuisance action and complaints about violations of the building code, in addition to the condemnation action); it has sent letters to HUD and met with federal employees in an effort to persuade the agency to cut off federal funding for Evergreen Terrace; it has made public statements accusing New West of operating run-down buildings and informing the City's populace (including prospective tenants) that it would do what was possible to close and raze the complex.

New West characterizes these steps as violations of multiple federal statutes, but the *Noerr-Pennington* doctrine protects litigation, lobbying, and speech. *Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses. See, e.g., *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983); *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993); *BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002). As far as the national government is concerned, a municipality has a right to speak and petition for redress of grievances, so the *Noerr-Pennington* doctrine applies fully to municipal activities. See *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991). See also *Affordable Housing Development Corp. v. Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1231-33 (9th Cir. 2000); *Manistee Town Center v. Glendale*, 227 F.3d 1090, 1093-94 (9th Cir. 2000), all applying the *Noerr-Pennington* doctrine to block suits under the Fair Housing Act arising out of allegedly biased litigation or lobbying by municipalities.

At oral argument, counsel for New West maintained that the *Noerr-Pennington* doctrine is inapplicable because Joliet (supposedly) lied to HUD and its own populace. That is no distinction; the holding of *Noerr* is that lobbying is protected whether or not the lobbyist used deceit. New West also maintains that the suits that Joliet has filed are "shams." Yet none has been adjudicated in New West's favor—and even if New West ultimately wins them all, that would not demonstrate that the suits were shams, a term that the Supreme Court has used to denote baseless litigation filed only because of the expense that the defendant must incur. See *Professional Real Estate Investors*, 508 U.S. at 60-61. New West has settled (for a substantial payment) one of the suits that

Joliet filed in state court, so that one cannot have been a sham; the proper classification of the rest remains to be determined.

Only if the *Noerr-Pennington* doctrine is inapplicable must the district court address the merits of New West's contentions. Discussion of that subject on this appeal would be premature.

REVERSED AND REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*