**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 3, 2001**

TIG INSURANCE COMPANY, INC.,

    Plaintiff-Appellee,

v                                     No. 115915

REVENUE DIVISION, DEPARTMENT
OF TREASURY, STATE OF MICHIGAN,

    Defendant-Appellant.
_____

TIG PREMIER INSURANCE COMPANY, INC.,

    Plaintiff-Appellee,

v                                       No. 115916

REVENUE DIVISION, DEPARTMENT
OF TREASURY, STATE OF MICHIGAN,

    Defendant-Appellant.
_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

    These consolidated cases require us to decide whether a
1988 amendment of the Michigan Insurance Code's retaliatory
tax, MCL 500.476a, deprived plaintiffs TIG Insurance Company

and TIG Premier Insurance Company of equal protection of the laws under US Const, Am XIV and Const 1963, art 1, § 2, or violated the Uniformity of Taxation Clause of Const 1963, art 9, § 3. Absent an imposition on a fundamental right or a suspect class, tax legislation is reviewed to determine whether its classifications bear a rational relation to a legitimate state purpose. We conclude that the 1988 amendments of the retaliatory tax, which changed the tax calculation, are rationally related to the legitimate state purpose of promoting the interstate business of domestic insurers, the same legitimate purpose behind the retaliatory tax itself. Thus, the amendments of the retaliatory tax do not violate equal protection, and also do not violate the Uniformity of Taxation Clause. Accordingly, the judgment of the Court of Appeals is reversed.

I

This case involves the retaliatory tax that Michigan imposes on foreign insurers doing business in Michigan. Under the retaliatory tax, when an insurer's state of incorporation imposes a larger aggregate tax burden on a Michigan insurer doing business in that state than Michigan imposes on a company from that state doing business in Michigan, the foreign insurer must pay Michigan a tax equal to the difference in the aggregate tax burdens. See MCL 500.476a. Thus, to compute the retaliatory tax due from a foreign insurer, if any, Michigan tallies all the taxes, fines, penalties, and other burdens it otherwise imposes on the foreign insurer doing business in Michigan. Michigan then tallies the burden a hypothetical Michigan insurer would pay

2

to that insurer's home state were the hypothetical Michigan insurer doing the same amount of business there. If the other state's total burden on the hypothetical Michigan insurer doing the same amount of business in that state would be larger than the burden Michigan imposed on the foreign insurer, the actual burden Michigan imposes is subtracted from the other state's burden on the hypothetical insurer, and the difference is the retaliatory tax the foreign insurer owes Michigan. These taxes have been common in insurance taxation since the nineteenth century, see *Western & Southern Life Ins Co v State Bd of Equalization,* 451 US 648, 668; 101 S Ct 2070; 68 L Ed 2d 514 (1981), and Michigan has had a form of a retaliatory tax since 1871. See 1871 PA 80, § 4 (adding what was then § 28 to the insurance code).

Until 1987, the retaliatory tax was one of two taxes imposed on foreign insurers. The other was the premiums tax, MCL 500.440, repealed by 1987 PA 261, which taxed a percentage of the insurers' business. However, in 1987, the Court of Appeals held that the premiums tax violated equal protection, and struck it as unconstitutional. See *Penn Mut Life Ins Co v Dep't of Licensing & Reg,* 162 Mich App 123, 130-133; 412 NW2d 668 (1987). After the Court of Appeals decision in *Penn Mutual*, which was not appealed to this Court, the Legislature revised the Michigan Insurance Code tax provisions by repealing the premiums tax, subjecting foreign insurers instead to the Single Business Tax, MCL 208.1 *et seq.,* and repealing and reenacting the retaliatory tax. See 1987 PA 261, 262. The new retaliatory tax, MCL 500.476a, mirrored the prior retaliatory tax. However, the revision added subsection

3

(2), stating that "[T]he purpose of this section is to promote the interstate business of domestic insurers by deterring other states from enacting discriminatory or excessive taxes."

In 1988, actual revenue from insurance taxes was below the level of projected revenue the Legislature had relied upon in enacting 1987 PA 261 and 262. One of the reasons that revenue was lower than expected was that foreign insurers were including assessments paid to private insurance associations and facilities, such as the Worker's Compensation Placement Facility, among their Michigan burdens when calculating their retaliatory taxes. When these assessments were included in the foreign insurers' Michigan burden, their Michigan burden grew larger, and any differences between the Michigan burden and the burden the insurers' home states imposed shrank. The result was less retaliatory tax revenue.

After these facts were clear, the Legislature enacted 1988 PA 349. This provision did not affect the retaliatory tax's scope. Instead, it only changed the method of calculating the tax by providing that payments to private insurance associations and facilities are not counted as part of the Michigan burden when calculating retaliatory taxes. The resulting statute provides:

> (5) Any premium or assessment levied by an association or facility, or any premium or assessment of a similar association or facility formed under a law in force outside this state, is not a burden or special burden for purposes of a calculation under section 476a, and any premium or assessment paid to an association or facility shall not be included in determining the aggregate amount a foreign insurer pays to the commissioner under section 476a.

> (6) As used in this section, "association or facility" means an association of insurers created

under this act and any other association or facility formed under this act as a non-profit organization of insurer members, including, but not limited to, the following:

(a) The Michigan worker's compensation placement facility created under [MCL 500.2301 *et seq.*]

(b) The Michigan basic property insurance association created under [MCL 500.2901 *et seq.*]

(c) The catastrophic claims association created under [MCL 500.3101 *et seq.*]

(d) The Michigan automobile insurance placement facility created under [MCL 500.3301 *et seq.*]

(e) The Michigan life and health insurance placement facility created under [MCL 500.7701 *et seq.*]

(f) The property and casualty guaranty association created under [MCL 500.7901 *et seq.*] [MCL 500.134(5), (6).][1]

Hence, payments to these and other similar facilities are not part of the Michigan burden on foreign insurers, and such payments required by other states cannot be considered part of those states' burden when calculating retaliatory taxes.

The dispute in this case originally involved plaintiffs' retaliatory tax returns for 1990, 1991, and 1996. In those years, plaintiffs had made payments to the Worker's Compensation Placement Facility, the Basic Property Insurance Association, and the Automobile Insurance Placement Facility. Subsections 134(5) and (6), however, required plaintiffs to exclude those payments from their Michigan burdens when calculating the retaliatory tax they owed. Plaintiffs initially excluded these payments from their Michigan burden

---

[1] The Michigan Assigned Claims Facility created under MCL 500.3171 was subsequently added to the statute as subsection 6(g). See 1990 PA 256.

and fully paid their retaliatory tax for each year. Later, though, they filed amended returns that included these payments in their Michigan burdens, claiming that requiring them to exclude the payments violated the Equal Protection Clauses of the state and federal constitutions, as well as the Uniformity of Taxation Clause of the Michigan Constitution. Plaintiffs, therefore, sought a refund of the alleged unconstitutional overcharge. Defendant, however, denied refunds for all three years.

Plaintiffs appealed the denial of refunds to the Michigan Court of Claims, which consolidated their cases. The Court of Claims held that MCL 500.134(5) violates equal protection because it was enacted to raise revenue rather than to deter other states from imposing discriminatory or excessive taxes on Michigan insurers doing business in those other states. Also, the court held that plaintiffs' 1990 and 1991 claims were time-barred by MCL 205.27a(6). The court, therefore, ordered defendant to pay plaintiffs refunds consistent with their amended 1996 retaliatory tax returns.

Both parties appealed, and the Court of Appeals affirmed. That Court believed that when the Legislature revised the retaliatory tax in 1987, the Legislature did not intend to change the definition of "burden," and later did so only because revenues did not meet expectations. Thus, the Court concluded that equal protection was violated because it was "abundantly clear that 1988 PA 349 was enacted as a stop-gap measure to raise funds in response to a projected shortfall in insurance tax revenues. This is not a valid reason for discriminating against foreign insurers." 237 Mich App 219,

6

230; 602 NW2d 839 (1999).  The Court of Appeals also affirmed the Court of Claims conclusion that plaintiffs' 1990 and 1991 claims were time-barred, leaving plaintiffs with a judgment for refunds for 1996.  Defendant appealed the Court of Appeals conclusion that 1988 PA 349 violates equal protection, we granted leave, 463 Mich 905 (2000), and we now reverse.

II

The United States Supreme Court addressed the constitutionality of retaliatory taxes in *Western & Southern Life Ins Co v State Bd of Equalization, supra.*  In that case, California had adopted a retaliatory tax similar to Michigan's, and an Ohio corporation challenged its constitutionality.  The Supreme Court noted that several provisions of the constitution generally limit states' ability to regulate foreign corporations, but under the Commerce Clause, US Const, art 1, § 8, Congress has delegated insurance regulation to the states, see 15 USC 1011 *et seq.,* and the privileges and immunities clause, US Const, art 4, § 2, does not apply to corporations, see *Hemphill v Orloff,* 277 US 537, 548-550; 48 S Ct 577; 72 L Ed 978 (1928), leaving only the Equal Protection Clause as a basis for the challenge. *Western & Southern* at 656.  After reviewing its prior decisions, the Court concluded that a state's authority to treat foreign corporations differently than domestic corporations should be upheld if the different treatment bears a rational relation to a legitimate state purpose.  California's retaliatory tax, the Court held, had the legitimate state purpose of promoting domestic insurers in other states by discouraging other states from excessively taxing domestic insurers.  The tax was

7

reasonably related to that purpose because the California Legislature could have believed that the tax would "induce other States to lower the burdens on California insurers in order to spare their domestic insurers the cost of the retaliatory tax in California." *Id.* at 672. Thus, the Supreme Court confirmed that retaliatory taxes do not violate equal protection, and do not violate the constitution.

In light of *Western & Southern,* the general constitutionality of Michigan's retaliatory tax is clear. The question in this case surrounds 1988 PA 349. That amendment of Michigan's retaliatory tax did not change the classification plan drawn by Michigan's retaliatory tax. Rather, it only changed the calculation method of a foreign insurer's Michigan burden by providing that payments to certain private insurance associations and facilities are not included in the burden. Whether the amendment violates the state or federal Equal Protection Clauses, which are coextensive, see *Armco Steel v Dep't of Treasury,* 419 Mich 582, 591; 358 NW2d 839 (1984), or Michigan's Uniformity of Taxation Clause, which is not discernably different from equal protection in cases involving tax statutes, see *id.* at 592, presents a question of law. We review questions of law de novo. See *Tolksdorf v Griffith*, 464 Mich 1; ___ NW2d ___ (2001).

As *Western & Southern* declared, rational basis review applies in challenges of retaliatory taxes. "Rational basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with 'mathematical nicety,' or even whether it results in some

8

inequity when put into practice." *Crego v Coleman,* 463 Mich 248, 260; 615 NW2d 218 (2000). Rather, it tests only whether the legislation is reasonably related to a legitimate governmental purpose. The legislation will pass "constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable." *Id.* at 259-260. To prevail under this standard, a party challenging a statute must overcome the presumption that the statute is constitutional. *Thoman v Lansing,* 315 Mich 566, 576; 24 NW2d 213 (1946). Thus, to have the legislation stricken, the challenger would have to show that the legislation is based "solely on reasons totally unrelated to the pursuit of the State's goals," *Clements v Fashing,* 457 US 957, 963; 102 S Ct 2836; 73 L Ed 2d 508 (1982), or, in other words, the challenger must "negative every conceivable basis which might support" the legislation. *Lehnhauser v Lake Shore Auto Parts Co,* 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973).

In this case, plaintiffs claim that Michigan has exceeded its authority to treat foreign corporations differently than domestic corporations because the different treatment does not bear a rational relation to a legitimate state purpose. This is so, plaintiffs claim, because 1988 PA 349, which excluded certain payments from plaintiffs' Michigan burdens for retaliatory tax calculations, converted the retaliatory tax from a tax intended to discourage other states from imposing excessive levels of taxation on Michigan insurers to a tax designed to raise revenue at the expense of foreign insurers.

Thus, plaintiffs argue that the 1988 amendment of the retaliatory tax cannot be constitutional.

Initially, we emphasize that Michigan's retaliatory tax has never, either before or after the 1988 amendment, treated foreign insurers as a single class. Rather, the subset of foreign insurers that must pay Michigan any retaliatory tax is actually determined by the laws of other states. Specifically, the subset is determined by the laws of those states that impose more onerous burdens on Michigan insurers than Michigan imposes on insurers from those states. The Supreme Court made this same observation about the retaliatory tax it held constitutionally permissible in *Western & Southern,* stating that "[t]he retaliatory tax is not imposed on foreign corporations *qua* foreign corporations, as would be expected were the purpose of the tax to raise revenue from noncitizens; rather, it is imposed only on corporations whose home States impose more onerous burdens on California insurers than California otherwise would impose on those corporations." *Western & Southern* at 670, n 23.

Absent a change in the legislative classification, we cannot agree with plaintiffs' claim that a 1988 amendment converted the retaliatory tax into a tax designed to raise revenue from foreign insurers. Rather, the selective imposition of the tax on only those insurers incorporated in states that tax Michigan insurers more heavily than Michigan taxes them indicates that the purpose of the legislation is to pressure those states to relieve the tax burden on Michigan insurers doing business in those states. This is the precise purpose the Legislature stated for adopting the retaliatory

10

tax, see MCL 500.476a(2), and the same purpose the Supreme Court found "not difficult to discern" in *Western & Southern* at 668. Further, in *Western & Southern,* the Supreme Court held, without discussing the means a state may adopt to calculate the retaliatory tax, that states are reasonable to suppose that a retaliatory tax will induce other states to lower their insurance tax rates. *Id.* at 672. Even with the change in the method of calculation of the burden of Michigan's retaliatory tax, the tax remains rationally related to this legitimate purpose, and plaintiffs cannot prevail.

However, even presuming that 1988 PA 349 can somehow be viewed separately from Michigan's retaliatory tax structure, the Legislature could have rationally decided to exclude payments to certain insurance associations and facilities from Michigan's retaliatory tax burden. The three facilities in this case, the Worker's Compensation Placement Facility, the Automobile Insurance Placement Facility, and the Basic Property Insurance Association, exist to provide insurance coverage to insureds that may be unable to "procure the insurance through ordinary methods." MCL 500.2301(a); see also MCL 500.3301(a) and MCL 500.2925 (describing eligibility for Basic Property Insurance). Because high risk or otherwise uninsurable insureds are provided for outside the normal insurance market, insurers doing business in Michigan need not bear the risks of insuring them, at least arguably benefitting such insurers. The Legislature could have believed that if it did not require payments to these facilities not to be excluded from the retaliatory tax burden, other states would not be discouraged from establishing similar facilities to

11

grant the same benefit to insurers doing business in those states, including Michigan insurers. Indeed, if another state had facilities and associations that paralleled the facilities and associations mentioned in MCL 500.134, then any retaliatory tax that insurers from the other state may owe Michigan would not be affected by 1988 PA 349 at all.[2] Again, then, the Legislature could have had the permissible purpose of promoting domestic insurers abroad, the same purpose it stated in the retaliatory tax legislation. Because it is at least debatable that excluding payments to such facilities from Michigan's retaliatory tax burden would encourage other states to establish such facilities, the 1988 amendment is rationally related to a legitimate purpose, and is not constitutionally infirm.

Plaintiffs maintain, however, that the 1988 amendment conflicts with the Supreme Court's decision in *Western & Southern* because it was designed entirely "to generate revenue at the expense of out-of-state insurers." As we have explained, the tax does not affect foreign insurers as a single class. Further, though, plaintiffs overlook the presumption of constitutionality, and cannot account for the legitimate bases of the legislation. Instead, plaintiffs seek one possible illegitimate basis for the legislation. Plaintiffs' approach conflicts with Supreme Court precedent because they have not shown that the legislation rests "solely on reasons totally unrelated to the pursuit of the State's

---

[2] We note that several other states similarly exclude payments to special associations and facilities from their retaliatory tax burdens. See, e.g., Conn Gen Stat, 12-211; 215 Ill Comp Stat, 5/444.1(2).

12

goals . . . ." *Clements* at 963. Because there is at least one conceivable rational basis that might support the legislation, plaintiffs have not "negative[d] every conceivable basis which might support" it, and cannot prevail. *Lehnhauser* at 364.

In response, plaintiffs have argued that they need not negate every conceivable basis for the legislation. This is because, they claim, in equal protection cases, the Court "need not . . . accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation." *Weinberger v Weisenfeld,* 420 US 636, 648, n 16; 95 S Ct 1225; 43 L Ed 2d 514 (1975). However, as discussed, an examination of the legislative scheme in this case indicates that the asserted purpose could well have been the goal of the legislation. For plaintiffs to prevail, they must negate every conceivable basis of the legislation. Because plaintiffs have not, they cannot prevail.

Finally, plaintiffs attempt to distinguish this case from *Western & Southern* by arguing that the tax revenue generated in that case was "relatively modest," see *Western & Southern* at 669, but under the amendment, Michigan's retaliatory tax immodestly generates over a third of Michigan's insurance tax revenue. As a preliminary point, the fact that the retaliatory tax raises revenue does not prove that raising revenue was the state's goal in adopting the tax. On rational basis review, this Court only considers whether the legislation is reasonably related to a legitimate purpose, and

13

does not test for "some inequity when [the legislation is] put into practice." *Crego* at 260. But further, though the *Western & Southern* Court's statement strikes us simply as an observation and not, as plaintiffs contend, as the linchpin of the Court's analysis, even if it is an important point, this case is distinguishable. Michigan's retaliatory tax may generate a third of Michigan's insurance tax revenue, but the Supreme Court did not state that the retaliatory tax it approved raised a relatively modest amount of insurance tax revenue, just that it raised a modest amount of revenue. The joint appendix shows that although Michigan raised approximately $67 million annually in retaliatory taxes for the years 1991 through 1995, for example, when compared with Michigan's overall tax revenue for that period, which ranged from $10.5 billion to $17.2 billion annually, see Michigan Dep't of Treasury, Annual Report of the State Treasurer (1996), p 25, retaliatory tax revenue is certainly "relatively modest." Thus, even if retaliatory tax revenue must be modest, as compared with Michigan's overall tax revenue, retaliatory tax revenue is not immodestly large, and plaintiffs again have not shown Michigan's retaliatory tax or 1998 PA 349 to be unconstitutional. Again, plaintiffs cannot prevail.

### III

In conclusion, neither Michigan's retaliatory tax nor the 1988 amendment of that tax violates the state or federal constitutions, which are coextensive in their equal protection provisions. The retaliatory tax, and the amendments of it, are rationally related to the legitimate governmental purpose

14

of promoting Michigan insurers in other states. Because the tax and its amendment do not violate equal protection, they also do not violate the Michigan Constitution's Uniformity of Taxation Clause, which is not discernibly different from the Equal Protection Clause when the constitutionality of a tax statute is being reviewed. Plaintiffs have not carried their considerable burden, and the judgment of the Court of Appeals is reversed.

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**


TIG INSURANCE COMPANY, INC.,

    Plaintiff-Appellee,

v                                                          No. 115915

REVENUE DIVISION, DEPARTMENT
OF TREASURY, STATE OF MICHIGAN,

    Defendant-Appellant.

_____

TIG PREMIER INSURANCE COMPANY, INC.,

    Plaintiff-Appellee,

v                                                          No. 115916

REVENUE DIVISION, DEPARTMENT
OF TREASURY, STATE OF MICHIGAN,

    Defendant-Appellant.

_____

KELLY, J. (*concurring*).

While I agree with the conclusion reached by the majority, I write separately to state my disagreement with certain of the reasoning it employs. Whereas the majority articulates what would be legitimate purposes for adoption of the amendment, it completely ignores the evidence presented by plaintiffs. This evidence throws into doubt whether the Legislature's actual purpose was legitimate, as it has to be in order to conform with precedent from the United States

Supreme Court.

The states cannot impose more onerous taxes or other burdens on foreign corporations than on domestic corporations, unless they bear a rational relation to a legitimate state purpose. *Western & Southern Life Ins Co v State Bd of Equalization*, 451 US 648, 667-668; 101 S Ct 2070; 68 L Ed 2d 514 (1981). A retaliatory tax act, like that in question, makes of foreign corporations a special classification of taxpayers.

In evaluating the constitutionality of a challenged classification, we must consider two separate issues. First, whether the statute in question advances a legitimate purpose and, second, whether, in passing it, the Legislature reasonably could have believed that the classification would promote that purpose. *Id.* at 668. Only after a legitimate purpose is ascertained does a rational relationship between the classification and purpose become relevant. See *Metropolitan Life Ins Co v Ward*, 470 US 869, 881; 105 S Ct 1676; 84 L Ed 2d 751 (1985).

While this two-step inquiry does not require that the Legislature articulate its purpose in forming the challenged classification, it does require that a conceivable or reasonable purpose exist. *Nordlinger v Hahn*, 505 US 1, 15; 112 S Ct 2326; 120 L Ed 2d 1 (1992). The United States Supreme Court rejected the proposition that promotion of domestic industry is always a legitimate purpose, reasoning that it "eviscerate[s] the Equal Protection Clause." *Metropolitan Life, supra* at 882. The Court stated that, if

2

this proposition were accepted, any discriminatory tax would be upheld if it could be shown that it was reasonably "intended to benefit domestic business." *Id.*

This appears to be the rationale used by the majority in upholding the amendment at issue. The majority does not discuss the evidence presented by plaintiffs or how this evidence is insufficient to overcome the presumption of the amendment's constitutionality. Rather, it concludes that the purpose of the amendment may have been the same as the purpose stated in the underlying retaliatory tax act. That was to promote domestic insurers abroad, a permissible purpose.

It seems unlikely that was the Legislature's purpose because, as stated by the majority, the amendment appeared when the Legislature discovered that retaliatory tax revenue was far less than expected. See slip op at p 4. If sufficient evidence had been presented by plaintiffs that the purpose was to cover the shortfall, the legitimate purposes opined by the majority would not necessarily carry the day.

Therefore, this Court should state explicitly that the rational basis test, while deferential, does not ensure that all taxation legislation will pass constitutional muster. In this case, plaintiffs presented evidence that employees from the Department of Management and Budget and the Department of Treasury advocated the amendment for a purpose that was impermissible. This evidence does not overcome the presumption of constitutionality because it does not explicitly demonstrate that the "classification is a hostile

3

and oppressive discrimination." *Lehnhausen v Lake Shore Auto Parts Co,* 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973). But this is not to say that, in another case, the burden in overcoming the presumption of constitutionality cannot be met.

In failing to address this fact, it appears that the majority would uphold any classification, regardless of evidence demonstrating an actual improper purpose for it. The majority's scant treatment of the evidence presented seems to eliminate any possibility of future litigants demonstrating an improper purpose for a challenged classification. It reduces the test for evaluating the constitutionality of a classification to no more than abstract judicial imaginings with little or no apparent basis in fact. Moreover, it elevates a plaintiff's burden of proof to insurmountable heights. Such reasoning is contrary to the United States Supreme Court precedent of *Western & Southern Life* and *Metropolitan Life.*

4