PRUDENTIAL PROPERTY AND CASUALTY COMPANY v
DEPARTMENT OF TREASURY
PRUDENTIAL INSURANCE COMPANY OF AMERICA v
DEPARTMENT OF TREASURY

Docket Nos. 260203, 260204. Submitted September 6, 2006, at Grand
Rapids. Decided September 19, 2006, at 9:00 a.m.

Prudential Property and Casualty Insurance Company and Pruden-
tial Insurance Company of America brought separate actions in
the Court of Claims against the Department of Treasury, seeking
refunds of the retaliatory tax imposed on foreign insurance com-
panies under MCL 500.476a and 500.476b. The court, Thomas L.
Brown, J., granted judgment for the plaintiffs, concluding that the
department had improperly disallowed single business tax credits
against the tax. The department appealed.

The Court of Appeals *held*:

1. The trial court erred by allowing the single business tax
credits at issue. Under the retaliatory tax statutes, a foreign
insurance company must pay the greater of its single business
tax obligation in Michigan or the obligation that a Michigan
insurance company similar to the foreign insurer would face in
the foreign insurer's home state. In other words, if the similar
Michigan insurer would theoretically pay more to the foreign
state than the foreign insurer is required to pay under Michi-
gan's single business tax, the foreign insurer must pay in
Michigan the amount the similar Michigan insurer would be
required to pay in the foreign state. The plaintiffs improperly
offset the foreign state tax obligations of their hypothetical
similar companies with single business tax credits for manda-
tory payments to Michigan insurance associations and facilities.
Such use of these credits is not permitted because the credits
would not factor into the calculation of the foreign states'
aggregate financial burdens on a Michigan insurer.

2. The limited availability of these credits to foreign insurers
does not violate equal protection principles because the Michigan
retaliatory tax scheme only withholds the credits from insurers
whose home states place higher total financial burdens on Michi-
gan insurers than Michigan would place on a foreign insurer under

the single business tax. The scheme only requires those foreign insurers to pay the same amount that similar Michigan insurers would pay in the foreign insurers' home states. The result would be different if the department had failed to recognize the allowance of similar credits by foreign states for Michigan insurers doing business in those states. In such a case, the comparison for retaliatory tax purposes should consider how much tax credit the foreign state would grant a Michigan insurer that had fully paid the required association fees, for example, in the foreign state and the resulting tax burden on the hypothetical Michigan insurer. The plaintiffs, however, did not claim their home states' credits on their amended tax returns.

TAXATION — SINGLE BUSINESS TAX — INSURANCE — RETALIATORY TAX ON FOREIGN INSURANCE COMPANIES.

The retaliatory tax statute requires a foreign insurance company to pay the greater of its single business tax obligation in Michigan or the obligation that a Michigan insurance company similar to the foreign insurer would face in the foreign insurer's home state; single business tax credits for mandatory Michigan insurance associations and facilities may not be used to offset the retaliatory tax, but, in its calculation, a foreign insurer may attribute to the hypothetical similar Michigan insurer any deductions or credits, including those for such association or facility fees, that the foreign state would allow the hypothetical Michigan insurer under the foreign state's tax laws (MCL 500.134[5], 500.476a, 500.476b).

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin* and *June Summers Haas*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Bryan E. Kurtz* and *Glenn R. White*, Assistant Attorneys General, for the defendant.

Before: SAWYER, P.J., and FITZGERALD and O'CONNELL, JJ.

PER CURIAM. Defendant appeals as of right the trial court's order allowing plaintiffs to take single business

tax credits against Michigan's retaliatory tax on insurance companies. We reverse.

This case arose when plaintiffs amended their tax returns to take a credit available to domestic and foreign insurance companies that file their taxes under Michigan's single business tax (SBT). The credits are included as part of the calculation for determining the ultimate SBT owed. Plaintiffs, however, were required to determine their taxes consistently with the retaliatory tax, not the SBT, because, properly figured, their home states require foreign insurers to pay more in taxes and other payments, security, and charges than Michigan requires of its foreign insurers under the SBT. According to the retaliatory tax statute, a foreign insurance company must pay the greater of its SBT obligation or the obligation that a similar Michigan company would face in the foreign company's home state. MCL 500.476a and 500.476b. This means that plaintiff Prudential Insurance Company (PIC), which is a New Jersey corporation, was required to calculate its tax under the SBT and then create a hypothetical company, mimetic in all things except its state of origin, and send it back to New Jersey to be taxed. If PIC's imaginary Michigan twin would theoretically pay more to New Jersey than PIC was required to pay under Michigan's SBT, then PIC must pay the amount its twin would have paid in New Jersey. Therefore, if the insurer's home state imposes a higher financial burden on similar Michigan insurance companies than Michigan would ordinarily impose on the out-of-state insurer, then the hypothetical computation translates into very real funds in Michigan's coffers.

PIC challenged this system by offsetting its twin's foreign tax obligations with SBT credits, which are

available only to domestic insurers and foreign insurance companies from states that levy lower fiscal burdens on foreign insurers. PIC took the credits contained in the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, even though it was indisputably required to calculate its taxes according to the retaliatory tax scheme. The SBT credits in question are credits for mandatory payments to Michigan insurance associations and facilities. MCL 208.22c. Plaintiff Prudential Property and Casualty Insurance Company (PruPAC), an Indiana corporation, also took the SBT credits, even though it did not report any Indiana association or facility fees and Indiana did not offer the same credit for such payments. Both PIC and PruPAC took the SBT credits directly against the foreign taxes that their imaginary Michigan twins were hypothetically required to pay to New Jersey and Indiana, respectively.

Neither credit is permitted because the credit is an SBT credit that should never factor into the calculation of the home state's aggregate financial burden on Michigan insurers.[1] In MCL 500.476b, the statutory language clearly requires a foreign insurer to pay the greater of the tax calculated by applying the liabilities *and* credits found in the SBTA *or* the aggregate amount of financial obligations that the home state would require of a Michigan insurer as determined under

---

[1] We reject plaintiffs' characterization of the statute as ambiguous, and also reject the various definitions they propose for the terms "aggregate" and "taxes." The retaliatory tax statute, MCL 500.476a, does not limit itself to a comparison of foreign and domestic gross taxes, but compares every type of "required" "payment for taxes, fines, penalties, . . . or otherwise" and any other "burden" "imposed." It stands to reason that if either the foreign or domestic taxes are subject to a tax credit, then less money is "required" of the insurer. Therefore, the statute clearly and unambiguously seeks to discern the total, or "aggregate," amount of monetary obligation that similar foreign insurers would face in each state. MCL 500.476a.

MCL 500.476a. Although MCL 500.476a(5) applies one routing provision of the SBTA to the funds defendant receives from the retaliatory tax, it does not allow the insurer to apply any of the credits contained in MCL 208.22c against the retaliatory tax. In fact, nothing in the statutory framework suggests that an insurance company may borrow an SBT credit and apply it to its twin's hypothetical tax obligation to the insurer's home state. See MCL 500.476a. The statutory language in MCL 500.476b clearly and unambiguously prohibited plaintiffs' conduct, and the trial court erred to the extent that it held otherwise.

The limited availability of SBT credits does not violate equal protection principles because Michigan's tax scheme only withholds the credits from insurers whose home states place a higher total (or aggregate) financial burden on Michigan insurers than Michigan would place on the foreign insurer under the SBT and because it only requires those foreign insurers to pay the same amount that a similar Michigan insurer would pay in the insurer's home state. *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 558-559; 629 NW2d 402 (2001). Therefore, defendant did not violate plaintiffs' equal protection rights when it rejected their claimed credits for payments to Michigan associations and facilities. *Id.*

Plaintiffs raise a compelling corollary argument, however. They claim that defendant rejected the entire amount claimed as a credit, even though New Jersey and Indiana provide Michigan insurers with a tax credit for association payments. They argue that defendant's failure to recognize the other states' credits, while including the entire SBT credit for similar association payments, distorts the comparison of each state's tax on "similar" foreign insurers, contrary to MCL 500.476a.

Ironically, defendant here retreats from its argument for parity and responds that the foreign states do not allow credits for payments to *Michigan* associations and facilities, so the total rejection of the claimed credits was appropriate. This reverses the application of MCL 500.476a onto itself and disturbs the entire comparison of the hypothetically "similar" companies. The correct analysis does not turn on whether the home state provides a tax credit for payments made to foreign associations and facilities (like those in Michigan), but whether the home state allows Michigan insurance companies to take a credit for payments made to the home state's domestic associations and facilities. Otherwise, the analysis does not compare two "similar" insurers, as MCL 500.476a requires, but compares a foreign insurer that receives Michigan tax credits with a Michigan insurer that is artificially prevented from receiving all allowable tax credits from the home state.[2] To be considered "similar" under MCL 500.476a, the insurer's imaginary twin must be an insurance company deemed to have paid "similar" association fees to the real insurer's *home* state (i.e., the state that is foreign to the imaginary insurer), and it should receive whatever tax or payment credit that the home state allows. Otherwise, plaintiffs are correct that the home state's taxes are artificially inflated while Michigan's taxes are artificially reduced.

---

[2] This interpretation also ignores the fact that New Jersey similarly requires Michigan insurance companies to pay association fees, and that the insurer's hypothetical twin would not ordinarily pay a Michigan association so it could do business in New Jersey. Instead, the fictional twin would pay the corresponding New Jersey association. Under MCL 500.134(5), the association payments would be omitted from the calculation of New Jersey's aggregate burden on the hypothetical Michigan insurer, but payment of the fees would result in a tax credit that would reduce the fictional company's aggregate payment to the home state under MCL 500.476a.

For example, suppose Michigan and New Jersey each charged foreign insurers a flat $1,000 in gross taxes, with a 50-percent tax credit for any payment to domestic insurance associations, and further required $200 in association fees. The states would have achieved complete parity and would have accomplished every legitimate purpose for Michigan's establishment of the retaliatory tax and exclusion of association fees in the computation of that tax. See *TIG, supra* at 560-561; MCL 500.134(5).

Nevertheless, according to defendant's position, PIC would not be allowed to claim New Jersey's association-fee credit for its hypothetical twin, because the New Jersey credit is actually available only for payments to New Jersey associations and PIC actually paid its association fees to Michigan. Under this interpretation, however, the fees the insurer paid to Michigan associations would still generate a credit under the SBT. As a result, the required Michigan payments, excluding association premiums and assessments according to MCL 500.134(5), would be $1,000 less the tax credit of $100 (0.5 x $200) for an aggregate requirement of $900. The hypothetical New Jersey tax would be $1,000 total, with no tax credit permitted for the $200 the hypothetical company inexplicably paid to Michigan associations. The result is disparate treatment (a payment of $100 more) under an identical tax scheme. This does not comport with the language or the purpose of MCL 500.476a(1) and (2). Therefore, defendant's interpretation contradicts the language and the purpose of the retaliatory tax and would improperly discriminate against foreign insurers whose home states treat Michigan insurers the same way Michigan treats the other states' insurers.[3] See *TIG, supra* at 558-559.

---

[3] Although the tax credits are calculated on the basis of the association payments, nothing in the retaliatory tax scheme prevents the imaginary insurer from *reducing* its tax or other financial obligations by taking

To achieve the similarity anticipated in MCL 500.476a, it must be assumed that the imaginary "similar" Michigan insurer made the same financial transactions in the insurer's home state that the real foreign insurer made in Michigan. The insurer may then apply the foreign state's tax law to those transactions and take any deductions or credits that those transactions would garner the hypothetical Michigan insurer. Only then will the insurer and its hypothetical twin receive truly similar treatment, as MCL 500.476a requires.

Although this approach resolves most of plaintiffs' concerns, it unfortunately raises another set of conflicts when applied to the peculiar circumstances of association and facility fees. If the hypothetical credits are calculated on the basis of the actual insurer's payment to Michigan associations, the credits indirectly become a factor in calculating the insurer's special burdens, contrary to MCL 500.134(5), and parity (without considering association payments) is compromised, contrary to MCL 500.476a. For example, if Michigan requires payments of $400 in the example above, and New Jersey only required $20 from its foreign insurers, the real insurer would first take credit for the $200 (0.5 x $400) on its Michigan taxes, and would then attribute the $400 payment to its hypothetical twin to receive an identical $200 credit against the New Jersey taxes. This would result in an aggregate (fictional) New Jersey and (real) Michigan requirement of $800. The problem is that an actual Michigan insurer would only be required to pay $20 to the New Jersey association, and its actual New Jersey credit would only amount to $10, leaving it

credit for these payments. After all, Michigan allows domestic and some foreign insurance companies to account for these credits, MCL 208.22c, and requires all foreign insurers to calculate the SBT credit before comparing their SBT liability to their home state's payment obligations. MCL 500.476b.

with an actual required tax payment of $990. This $190 difference in required payments, excluding association expenses, conflicts with the purpose of MCL 500.476a, which is to calculate a burden equivalent to the burden that a similar Michigan company would pay in the other state. Moreover, the higher New Jersey requirement is, of course, attributable to the different requirements in association payments, and, under MCL 500.134(5), association and facility payments should not be factored into the requirement analysis. Otherwise, New Jersey is not induced to increase its association requirements and decrease its other burdens to be more like Michigan. See *TIG, supra* at 558-561. Instead, it is encouraged to drop its association requirements and maintain an identical credit rate so that the aggregate requirements, excluding association payments, tip strongly in favor of its domestic insurers. Therefore, allowing the hypothetical insurer to claim the real insurer's actual association payments would not accomplish the parity required by MCL 500.476a and would indirectly, but improperly, allow the insurer to account for the different states' particular association fee requirements, contrary to MCL 500.134(5).

The appropriate legal ground demarked by the statutes lies somewhere between allowing full credit and no credit at all. An attractive, but ultimately flawed, approach is to erase each state's credits entirely during the comparison. This would prevent the problem with MCL 500.134(5), because the association payments would never factor into the analysis. Unfortunately, this method would also skew the calculation of requirements placed on "similar" companies as intended in MCL 500.476a. For example, if Michigan and New Jersey each placed a gross tax burden of $1,000 on foreign insurers, and each required $100 in association payments, but Michigan provided a 100-percent credit

and New Jersey only provided a 50-percent credit for the association payments, then eliminating the tax credits entirely would suggest parity where none exists. The aggregate burden (again excluding association fees) would actually amount to $900 ($1,000 – $100) for the New Jersey insurer and $950 ($1,000 – $50) for a similar Michigan insurer.[4]

The better approach harmonizes the two statutes by disregarding the actual amount of association fees in accordance with MCL 500.134(5), while recognizing that if the foreign insurer has paid its association-fee requirement in Michigan, then a similar Michigan company would have paid its association-fee requirement in the insurer's home state. Therefore, a foreign insurer that has fully paid its required Michigan association fees and charges should ask: How much tax credit would my home state grant to a Michigan insurer that fully paid its required association fees? This approach alleviates any disparity caused by the difference in required association fees, but preserves a measure of parity by accounting for the tax relief that is available to a similar Michigan insurer doing business in the foreign state.[5] As suggested, the starting point for this

---

[4] This approach would also create new problems after the insurer compared the precredit results and selected the scheme that appeared to produce the greatest tax liability. Whichever tax scheme was selected, the insurer would necessarily be required to recalculate its tax with the credits in place to prevent discrimination in the application of the tax laws. However, contrary to MCL 500.476a, the calculation that included the credits could easily translate into a smaller aggregate liability than the other scheme would have provided. Therefore, this approach ultimately runs afoul of the statutory framework.

[5] Of course, this approach only works because it operates on the legal fiction that two potentially different payments are comparable. In fact, the actual monetary amounts paid to Michigan and required by the home state may be very dissimilar. Nevertheless, they are "similar" in one very important respect: they each represent the amount required by the state

analysis should be the comparison of the association fees each state requires of their foreign insurers. If the insurer paid all of Michigan's required association fees and no more, then the insurer must attribute to its fictional counterpart no more than the amount of association fees the home state would have imposed on a similar Michigan insurer doing business there.[6]

Applying this approach, if Michigan charged foreign insurers $1,000 in gross tax and permitted a credit of 50 percent for its required association payments of $200, then the aggregate Michigan requirement, less association payments, would be $900. If New Jersey had an identical system, then an identical Michigan company doing business in New Jersey would also be required to pay $900. In computing a New Jersey insurer's retaliatory liability, the insurer would arrive at the same result as the Michigan company. It would take the full $100 New Jersey credit on the full $200 association payment that New Jersey required, because it similarly paid the

providing the tax credit. This legal similarity sufficiently fulfills the parity requirement in MCL 500.476a, while satisfactorily harmonizing it with MCL 500.134(5).

[6] The only foreseeable problem with establishing similarity on this basis would arise if the foreign insurer deviated from paying the required expenses and either overpaid or underpaid them. The unanswered question would be whether the deviation should be accounted by percentage or actual dollars. For example, suppose Michigan required the insurer to pay $200 in association fees, New Jersey required $100 in association fees, and each state provided full credit for the fees on their respective taxes. If a New Jersey insurer paid $220 to a Michigan association, may it claim a $120 credit in calculating its retaliatory tax ($100 + $20 actual overpayment), or is it limited to $110 as a percentage of the overpaid requirement ($100 + [10% overpayment of the required $100])? We are confident, however, that either interpretation would satisfy the parity requirement in MCL 500.476a, and the obvious practical considerations seriously limit the likelihood of this problem actually arising. Therefore, defendant could adopt either approach, as long as one approach was consistently applied.

full association payment Michigan required. So far, complete parity in association fees and taxes has been achieved and is not being discouraged.

If Michigan then raised its association payment requirement to $400, then the aggregate Michigan requirement, less association payments, would be $800. The Michigan insurer could still take the New Jersey credit for $100, and the New Jersey insurer's hypothetical twin could also claim this credit on the assumption that it, too, paid New Jersey's required amount of association fees. This would result in equivalent aggregate payments of $900 for each Michigan company. However, the New Jersey insurer would not receive a tax benefit for paying Michigan's increased association requirement of $400, which would run contrary to MCL 500.134(5). *TIG, supra* at 558-561. Instead, the New Jersey insurer would be limited to the amount a Michigan company would be required to pay, and New Jersey would be encouraged to increase its own association fees to match Michigan's. See *id.* Of course, if New Jersey instead raised its tax credit to 100 percent, then the state would simultaneously alleviate its burden on an actual Michigan insurer and Michigan's burden on the New Jersey insurer, so there would be no problem. This comports with the overall tax scheme. Even if the percentages or fixed amounts of the credits change, the analysis will always turn on whether, excluding association payments, a similar fictional Michigan insurance company that similarly pays the full amount of the association expenses required in the insurer's state must pay more money to the insurer's home state than the insurer would pay Michigan under the SBT.

One peculiarity would arise if New Jersey raised its association requirements to $800 and provided insurers with a 25-percent credit. The Michigan insurer would

actually pay $800, but the New Jersey insurer's twin would claim full payment of $800 in association expenses, even though it actually paid only $400. Nevertheless, the Legislature accepted (in fact, created) this anomaly when it enacted MCL 500.134(5), instructing us to disregard, for retaliatory tax purposes, any difference between Michigan's association and facility burdens and similar burdens in other states. Therefore, this approach most closely harmonizes the two statutes.

In this case, however, plaintiffs did not claim the association-fee tax credits that their home states allowed, but instead took SBT credits on the basis of the fees they paid to Michigan associations. This was neither an application of their home states' laws, nor a permissible action under Michigan law. It did not achieve similarity between them and their hypothetical twins, but skewed the analysis in their favor. Therefore, the trial court erred by allowing this credit. However, defendant also misapplied the law by failing to account for the fact that New Jersey and Indiana granted similar Michigan insurers tax credits for their payments to associations or facilities. To correctly apply the law, it must be assumed that the hypothetical company completed the same transactions in the foreign state that the insurer completed in Michigan. For example, the law assumes that if in 1998 PIC paid its total obligation to Michigan's Life and Health Guaranty Association, then its hypothetical twin paid a "similar" amount to New Jersey, i.e., the full amount required by New Jersey law to fulfill its obligation to the New Jersey Guaranty Association. The hypothetical company may not take Michigan's 58.54-percent SBT credit of $1.8 million because this would conflate the separate tax schemes. It should, however, be allowed to take whatever tax credits New Jersey would provide to PIC's hypothetical Michigan twin as if the twin com-

pany had similarly fulfilled its association obligations in New Jersey. In fact, it appears that PIC followed this procedure in 1997 when its hypothetical twin recaptured ten percent of its fictional New Jersey Guaranty Association expenses as a credit against its retaliatory tax. Likewise, its original 1999 return contained a credit against its retaliatory tax obligation because of the New Jersey credit. Its amended return, however, claimed only the SBT credit against its retaliatory tax.

Plaintiffs did not specifically raise this alternative argument regarding the home states' credits until they presented their constitutional challenge in the Court of Claims, which never addressed the issue. The limited issue presented to the Tax Tribunal was whether plaintiffs could take the SBT credits for association payments directly against their retaliatory taxes, and the tribunal correctly held that they could not. No appeal was taken from this decision, so it represents the final word on everything within the tribunal's jurisdiction. MCL 205.752. To plead outside the jurisdictional limits of the tribunal, plaintiffs were required to present a constitutional question, not merely a question of statutory misinterpretation. See *Meadowbrook Village Assoc v Auburn Hills*, 226 Mich App 594, 596-597; 574 NW2d 924 (1997). In this case, the statutory scheme, when correctly applied, does not violate the Constitution, *TIG, supra* at 561, and defendant's application of the legitimate statutes to plaintiffs' returns did not violate plaintiffs' constitutional rights. Plaintiffs' returns did not claim their home states' credits, so defendant's failure to apply them was not an unconstitutional application of the statutes. Defendant merely denied the credits that plaintiffs incorrectly claimed, just as the legitimate statutes required. Defendant has consistently argued that plaintiffs could only claim tax credits, if any, for expenses that would qualify for tax credits

in their home states. This approach is nearly identical to the analysis adopted in this opinion.

Under the circumstances, plaintiffs have failed to present any evidence that they claimed the credits allowed in their home states and that defendant unconstitutionally denied them. In fact, part of plaintiffs' equal protection argument was that defendant was allowing other companies to take their home states' tax credits while rejecting plaintiffs' efforts to apply SBT credits. Therefore, what defendant would have allowed if plaintiffs had properly asserted their home states' credits is speculative and insufficient to support a claim that defendant violated a constitutional provision. Under the circumstances, plaintiffs failed to demonstrate a violation of their constitutional rights, and we reverse the Court of Claims in all respects.

Reversed.